**STATE of Missouri, Respondent,**

v.

**John C. BURNS, Appellant.**

**No. WD 39908.**

Missouri Court of Appeals,
Western District.

Aug. 30, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 4, 1988.

Application to Transfer Denied
Nov. 15, 1988.

David S. Durbin, Asst. Public Defender, Kansas City, for appellant.

Philip M. Koppe, Asst. Atty. Gen., Jefferson City, for respondent.

Before KENNEDY, C.J., and TURNAGE and BERREY, JJ.

BERREY, Judge.

A jury convicted the appellant of attempted forcible rape, armed criminal action and assault in the first degree. The trial judge imposed consecutive sentences

of forty-four years, fifty years and life imprisonment, respectively.

The appellant was nineteen years old at the time of the assaults and was possessed of "brutal strength." He had played tackle on his high school football team. He had moved to Kansas City from Neodesha, Kansas, and was attending DeVry Institute.

On the night of December 1, 1986, he entered the "Inside Story" bookstore, located in the Red Bridge Shopping Center. The sales clerk observed him browsing through the books. Subsequently, he called to the clerk from the back of the store to help him with some books. The clerk responded but became concerned because of appellant's facial expression and started to step back from him when he grabbed her by the shoulder and threw her into the bookcases. Appellant told the victim, "Don't yell, don't fight, or I'll cut you." He then pushed up her skirt and pulled off her pantyhose and pants. The victim informed appellant that the store owner was due back in a few minutes. Appellant then began hitting the victim about the face and ears. Appellant was kneeling in front of the victim and unzipped his pants and started masturbating. At this juncture appellant tore open the victim's blouse, pulled her bra down and cut the straps with a knife. He then proceeded to again hit the victim in the face. The victim "was afraid I was going to die." The appellant then attempted to rape the victim. The victim testified:

Q. Okay. When you say he tried to rape you—I know this is difficult, but you're going to have to explain to the Jury exactly what he did that led you to believe he was trying to rape you.

A. He was in front of me with his trousers down. He was trying to penetrate me, and he was saying, "Don't get tight, don't get tight." All I could see was the knife sticking there in the box of books, and he would say, "Don't get tight."

At this time the victim heard the book shop door open and yelled for help. The defend-

ant then grabbed his knife and jabbed it in her throat and cut across her throat. He then jumped up and left.

Appellant's counsel raises the following points on appeal: (1) the trial judge erred in not calling a mistrial after the judge had termed the crimes "vicious" and labeled the appellant's counsel "disrespectful."; (2) trial court error in failing to give a lesser included offense instruction of second degree assault; (3) trial court error in excluding events in appellant's life that were reflective of his mental health; and (4) trial court error in overruling appellant's objection to state's closing argument when the state argued appellant had exercised his right to plead not guilty.

The trial judge did not err in failing to declare a mistrial following his characterization of the crimes as vicious and the appellant's attorney as disrespectful.

The entire transcript is replete with acrimony. The trial judge evidenced extreme patience for which he is to be commended.

■ On at least one occasion he had to caution appellant's attorneys that they should not "double team" him. The trial court twice alluded to the "vicious crimes" however, it was not until his second reference to "those vicious crimes" that appellant sought a mistrial.

A review of victim's injuries justifies the use of the descriptive adjective vicious—defined in *Webster's Third New International Dictionary*, 1971, p. 2550, as:

1) a: having the nature or quality of vice: violative of moral rectitude: contrary to accepted standards of right or good: DEBASED, DEPRAVED ...

   b: addicted to vice, immorality, or depravity: corrupt or dissolute in conduct....

The victim suffered a bruised hip that took three months to heal. Immediately following the attack she could not stand. "My face was all swollen, my face and my ears were black and blue, and I had black and blue spots under my hair on my scalp." She testified further about her injuries:

Q. Now, before we took a recess, you were beginning to describe the inju-

ries that you received. Let's again start with the injuries that you received to your face. Would you describe those for the Jury, please?

A. My eyes were black and blue, both sides of my face were swollen, my lips were swollen, my ears were black and blue.

Q. Now, in reference to your neck, what were the injuries that you received?

A. I had lacerations and puncture wounds of the neck.

Q. Do you still have scars as a result of the attack?

A. Yes.

The victim's neck was scarred and puckered. One scar was from the tracheostomy performed in the hospital so she could breathe. Since the attack she has experienced difficulty swallowing. She described the feeling "when I swallow that my throat is narrower than what it was previously." In the hospital she could not eat and was fed through a tube placed through her nose and into her stomach, and also had intravenous feeding.

■ While the trial judge could have referred to the assault as an assault, his descriptive adjective is supported by the evidence and the jury was not prejudiced by this remark. This remark does not destroy the absolute impartiality required of the trial judge. *See State v. Engleman*, 634 S.W.2d 466, 474 (Mo.1982).

■ The appellant did not seek a specific ruling, such as requesting the trial court to instruct the jury to disregard his characterization of the assault, instead he sought a mistrial. Mistrials are drastic remedies and the granting of a mistrial is within the trial judge's discretion. *State v. Foulk*, 725 S.W.2d 56, 67 (Mo.App.1987).

While the trial judge's reference to the assault as vicious may have been an unfortunate choice of words, it did not, taken in context of the trial setting, tend to prejudice the jurors against defendant or deny defendant a fair trial. *State v. Engleman, supra*, 634 S.W.2d at 474.

The defense counsel attempted to question both appellant's mother and appellant regarding incidents that had occurred years prior to the assaults for which appellant was on trial. Mr. Anderson, one of appellant's two trial attorneys, tried repeatedly to interrogate the witnesses about past events in appellant's life. The trial court sustained the state's objections and Mr. Anderson responded with oral "offers of proof" which the court considered and denied.

The trial court not only warned the appellant's attorney Anderson to refrain from such questioning, but it tried to explain its reasoning to Anderson on more than one occasion. Mr. Anderson asked many questions to which objections had been sustained by simply rephrasing and asking them again.

The trial court ruled that appellant's feelings about moving from Neodesha to Kansas City, about his high school dating patterns, about his sister having a nervous breakdown, about his decision not to have psychiatric counseling, about his contacting mononucleosis in high school, about his wanting independence, and about his anxieties at DeVry were not relevant "as to his state of mind when he committed these vicious crimes."

Mr. Anderson repeatedly inquired about how defendant felt when he moved to Kansas City and the trial court sustained the state's objection based on relevancy.

The following is illustrative of this matter:

(By Mr. Anderson) How did you react emotionally when you moved to Kansas City?

MR. BEDNAR: Objection, Your Honor. I've made this objection before and it's been ruled on previously.

MR. ANDERSON: To my understanding, Your Honor, rape is not a strict liability defense. It seems we're precluded from generating any information about what he was thinking about when this incident happened.

THE COURT: Objection sustained.

Counsel, you've elected to make your disrespectful argument in the presence

of the Jury and I'm going to answer you in the presence of the Jury. You have not elicited any information from this defendant about his mental state at the time of these vicious crimes and the Court has properly ruled that those other items are inadmissible, and you're admonished not to criticize the Court's order and not to try to get improper matters into evidence.

MR. ANDERSON: I apologize, Judge. I meant no disrespect to the court.

MS. SCHENKENBERG: Mr. Anderson, let's approach the bench.

(Whereupon, the following proceedings were had out of the hearing of the Jury:)

MR. ANDERSON: At this point, Judge, I think I would move for a mistrial based on the Court's ruling and, secondly, for the characterization by the Court that this was a vicious crime. It's a comment by the Court on this crime, and I believe that's uncalled for.

MR. BEDNAR: Your Honor, the State would oppose any motion for a mistrial based on Mr. Anderson's constant ignoring of your rulings after several conferences at the bench and after several repetitions of his trying to elicit the same information and his outburst in front of the Jury.

THE COURT: The motion is overruled.

The comment by the trial court was not done in a contemptuous manner and was apparently warranted. *State v. Koonce*, 731 S.W.2d 431, 441 (Mo.App.1987). Factors in determining the propriety of any comment include, whether it was volunteered, was not made in response to an objection as a part of the court's ruling, was made in the presence of the jury or could have been construed by jury as prejudicing the defendant. *State v. Mitchell*, 693 S.W.2d 155, 160 (Mo.App.1985).

The trial court has the authority and obligation to maintain the orderly conduct of the trial. Its rulings with respect to actions of counsel rest largely within a wide discretion accorded the trial court. *State v. Reed*, 640 S.W.2d 188, 197 (Mo. App.1982).

The trial court did not abuse that discretion. Appellant's Point I is denied.

■ Appellant's Point II claims trial court error because the trial court failed to submit Instruction "A" submitted by appellant on the lesser included offense of second degree assault. The theory being that the appellant "recklessly" inflicted serious physical injury on the victim as opposed to "knowingly" inflicting said injuries.

A complete reading of the transcript fails to reveal any testimony upon which appellant's request for such an instruction could be based.

The appellant was convicted of first degree assault under the instruction which hypothesized that the appellant had knowingly caused serious physical injuries to the victim by stabbing her. The evidence was that she was not stabbed until she screamed for help upon hearing the bookstore door open. Under the circumstances herein such an act by defendant was done knowingly.

■ The appellant admitted he knowingly attacked the victim, but because of his uncontrollable anger he couldn't stop and was out of control. It cannot be said that this would reduce the crime as being recklessly perpetrated.

The court submitted a mental disease or defect instruction. This instruction required the jury to acquit the appellant if they had a reasonable doubt as to whether the defendant acted knowingly.

There was no evidence of defendant's alleged mental disease or defect and the trial court acted out of caution in granting this instruction. The benefit of the instruction inured to appellant. Appellant argues that *State v. Thompson*, 695 S.W.2d 154 (Mo.App.1985), supports his argument. Here the court held that the existence of a mental disease or defect not connected to the formation of intent or the existence of a relevant state of mind, does not require submission of a lesser included offense. *Id.* at 161.

When a husband followed his estranged wife to St. Louis and stabbed her twelve

times, his acts are consistent with murder only and thus there was no evidence tending to support a manslaughter instruction. *Id.* at 160.

Apparently, the appellant would have us adopt a form of "automatic submission" regardless of the evidence and this we decline to do.[1] Appellant's Point II is denied.

■ Appellant next complains that the trial court erred in excluding events in appellant's life that he related to his mental health as such would have been probative of appellant's mental state.

The trial court submitted appellant's Instructions 6 and 9 as tendered. The mental disease or defect instruction for assault first degree and attempted forcible rape. The appellant failed to introduce evidence as to his mental condition at the time the crimes were committed.

His father stated that based on his nineteen years of knowing his son, his son was not insane on December 1, when the crimes were committed.

The mother was also interrogated at length by appellant's attorney. She spoke of her son's "brutal strength." After an incident involving appellant's actions in tearing up some girls' clothing in a girls' locker room, she talked to appellant and decided against psychiatric treatment. She testified that her son was, "always independent and worked out his own problems."

There was extended colloquy between appellant's counsel and state's attorney over this testimony with many objections by the state which were sustained by the court. The subsequent offers of proof by appellant's counsel were not specific and sufficient in detail, but were conclusions of appellant's counsel, *State v. Townsend,* 737 S.W.2d 191, 192 (Mo. banc 1987), and did not demonstrate relevancy or materiality to preserve the issue for appellant's review. *State v. Cole,* 710 S.W.2d 345, 347 (Mo.App. 1986).

An offer of proof may be narrative through the counsel, but it must be definite, specific and set forth the content of the sought testimony in detail to demonstrate its admissibility. *State v. Townsend, supra,* 737 S.W.2d at 192. The preferred method for an offer of proof regarding a witness's testimony who, due to objection, has been precluded from testifying, is to present and preserve the offer by questioning the witnesses and receiving his answers while he is on the witness stand out of the presence of the jury. *Id.*

It would add nothing to set forth the very lengthy offers of proof made by appellant's counsel as they were conclusory statements and failed in specificity to demonstrate the desired "proof."

The trial court permitted appellant to testify as to his feelings, anxiety, and mental state, about his plans to attend DeVry, about his activities on the day in question, about the makeup of his family, about his vandalizing a girls' locker room, about his tearing up girls' clothes and writing graffiti on the wall, about trouble at school because of the fast pace and the economic pressures, about his desire for independence, about his roommates at DeVry and lack of privacy, about his job and trips back home to see his parents, about his difficulty in getting his homework done, about his pressures to succeed, about "something [that] just snapped in me," about how sad and depressed he felt after the incidents, and about getting help for himself. All of this was before the jury. Those questions that trial court sustained objections to were not relevant and did not tend to establish any meritorious defense.

Since the trial court is vested with great discretion in determining relevancy and materiality deference is given to such discretion. *State v. Brown,* 718 S.W.2d 493 (Mo. banc 1986). Absent a clear showing of abuse, this court will not fault the trial judge's ruling on admission of evidence. *State v. Green,* 674 S.W.2d 615 (Mo.App. 1984). Defendant's Point III is denied.

The final point of appellant relates to the comments by the prosecuting attorney during closing argument. Once again this court is called upon to review a prosecuting

1. For an excellent review of this subject the reader is directed to *State v. Thompson, supra.*

attorney's comments, comments which would have been better left unsaid. The prosecuting attorney's argument was not prejudicial but certainly was reaching for it as overkill.

The appellant alleges that the remarks of the prosecuting attorney were adverse to the appellant in that they regarded appellant's right to plead not guilty and thereby required the state to prove its case.

Appellant's Point IV is best described by quoting it directly.

## ARGUMENT IV

THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S OBJECTION TO THE STATE'S CLOSING ARGUMENT THAT APPELLANT HAD EXERCISED HIS RIGHT TO PLEAD NOT GUILTY AND THEREBY FORCED THE COMPLAINING WITNESS TO TESTIFY IN COURT IN THAT SUCH COMMENT WAS AN IMPROPER REFERENCE TO APPELLANT'S ASSERTION OF HIS RIGHT TO PLEAD NOT GUILTY AND WAS NOT BASED ON ANY EVIDENCE ADDUCED AT TRIAL BECAUSE THE ARGUMENT INVITED THE JURY TO PENALIZE APPELLANT FOR THE EXERCISE OF HIS RIGHT TO REQUIRE THE STATE TO PROVE ITS CASE.

In appellant's closing argument he asked for a "fair" verdict. He argued the justice his client sought was not inconsistent with the victim's right to seek justice. The prosecuting attorney responded by setting forth the rights afforded appellant.

The prosecuting attorney stated:

MR. BEDNAR: And it's fair that this defendant have a trial, and it's fair that the State has the burden to prove beyond a reasonable doubt that this defendant is guilty of the crimes charged, the highest burden known to our system. And now it's also fair that he has Caroline Arnold come in here and he had the ability to sit there and, face-to-face, confront all of the witnesses against him, to question them through his attorney, to cross-examination, one of the finest machines invented by man to get to the truth. That was fair, and it was fair that Caroline Arnold had to go through those humiliating—

MS. SCHENKENBERG: Your Honor, I object to that. It was the State that called Ms. Arnold.

THE COURT: Objection overruled.

MR. BEDNAR: (Continuing)—that she had to go through those humiliating sexual assaults and those violent acts perpetrated against her in this trial so that the defendant, through his counsel, could cross-examine her.

Now it's fair that you, the Jury, who we chose on Monday, go back to your jury room and deliberate upon the punishment that this defendant deserves for the violent acts that he committed at the Red Bridge Shopping Center on December 1st.

The appellant's attorney was not specific and preserved nothing for appellate review. Such an objection states no grounds for why the remark is opposed, does not allow the court an informed opportunity to rule and ultimately presents no question to the trial court for decision or to the appellate court for review. *State v. Quick*, 639 S.W. 2d 880, 882 (Mo.App.1982).

The objection by the appellant preserved nothing for review and the second sentence of the appellant's objection was totally unresponsive.

The comments by the prosecuting attorney to be reviewed must be done under Rule 30.20 "plain error" and unless the complained of remarks are determined to have a "decisive effect" on the jury no plain error exists. *State v. Wilson*, 757 S.W.2d 622, 630 (Mo.App. July 12, 1988). As the court said in *Wilson*, "It cannot be determined that the argument had a decisive effect on the jury...." *Id.* at 630. Point IV is denied.

Once again this court is called upon to review a prosecuting attorney's closing argument. Certainly in a case such as this, facts speak volumes and the remarks of a prosecuting attorney ensnared in his own eloquence, add little to the case and are

better left unsaid. The prosecutor must be as Caesar's wife.

JUDGMENT AFFIRMED.

All concur.