**Charlie M. JAMISON, Appellant,**

v.

**A.L. LOCKHART, Appellee.**

**No. 91–3451.**

United States Court of Appeals, Eighth Circuit.

Submitted June 12, 1992.
Decided Sept. 24, 1992.

Howard B. Eisenberg, Little Rock, Ark., argued, for appellant.

Kelly K. Hill, Asst. Atty. Gen., Little Rock, Ark., argued, for appellee.

Before JOHN R. GIBSON, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and BEAM, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Charlie M. Jamison appeals from the denial of his petition for habeas corpus brought under 28 U.S.C. § 2254 (1988). A jury convicted Jamison of aggravated robbery and sentenced him to thirty years imprisonment. He raises a single issue on appeal: the district court erred in dismissing as procedurally barred his claim based on ineffective assistance of counsel. He argues that we should remand to the district court to consider whether there was cause for his failure to raise the conflict of interest claim in state court. We reverse and remand for a hearing on the issue of cause.

Jamison was charged with aggravated robbery on January 25, 1977 in Mississippi County, Arkansas. A local public defender initially represented him and filed several pretrial motions, including a motion attacking Jamison's alleged confession. Thereafter, Jamison's father retained attorney Percy Wright to represent Jamison. Jamison alleges that Wright was the attorney for the City of Blytheville, Arkansas at the time of his trial.[1] At trial, Wright apparently neither pursued the motion to suppress nor challenged the admissibility of the alleged confession.

After his sentencing, Jamison requested that Wright appeal the judgment, and Jamison alleges that Wright agreed. Wright apparently did not pursue the appeal. Eventually, in 1981, Jamison appealed the judgment pro se on sufficiency of evidence grounds.[2] The Arkansas Supreme Court affirmed his conviction. *Jamison v. State*, 611 S.W.2d 753 (1981).

In 1991, Jamison filed this habeas corpus petition raising numerous grounds, including the claim that he was deprived of effective assistance of counsel by virtue of Wright's conflict of interest. The magistrate judge found that the conflict of interest issue had not been raised in state court, and was therefore procedurally barred. Recognizing that pro se status, low educational level, and lack of familiarity with the court system are not sufficient cause to excuse such procedural default, the magistrate judge found that Jamison had not established sufficient cause for his default, and therefore refused to consider his conflict of interest claim.[3] The district court adopted the magistrate's recommendations and dismissed the petition. Jamison now appeals the decision of the district court.

There are two factual elements which are particularly significant considerations informing our decision in this case. The first is the nature of Jamison's alleged confession. The record reveals that Jamison was arrested on January 14, 1977. During the first three days that he was in police custody (January 14–16, 1977), he denied committing the robbery. The alleged confession occurred on January 17, 1977, the fourth day that he was in custody. He did not appear in court until January 26, 1977, and no counsel was appointed to represent him until March 4, 1977. Jamison's counsel now points out that the Arkansas Supreme Court had suppressed a confession obtained when the suspect had been in custody for four days without being taken before a magistrate.[4] Thus, under Arkansas law, Jamison may have a colorable claim that he was illegally detained. In addition, the only existing evidence of the alleged confession is a transcript prepared by the Blytheville Police Department. At trial, officers from that department testified that

---

**1.** This was Jamison's second trial for the offense. The first ended in a mistrial when the jury could not reach a unanimous verdict.

**2.** The form of Jamison's appeal was irregular. He filed a federal habeas petition form with the Arkansas state courts. He alleged numerous grounds in his petition. The Arkansas Supreme Court accepted the petition, construed it as a belated request for appeal, and narrowed the

ground of appeal to that of sufficiency of evidence.

**3.** By this time (1991) Jamison could no longer raise the issue in the Arkansas Courts. *See* Ark.R.Crim.P. 37.2.

**4.** Jamison cites *Duncan v. State*, 291 Ark. 521, 726 S.W.2d 653 (1987).

the transcript was based on a tape recording of the interrogation, which was destroyed prior to the trial. Jamison never signed a written confession. Throughout the trial and all subsequent proceedings, Jamison has denied ever making the statements contained in the confession transcript. Even under these circumstances, the alleged confession was never subjected to the scrutiny of a suppression hearing.

The second significant factual consideration is the nature of the alleged conflict of interest. Jamison alleges that Wright, his trial attorney, was the City Attorney for Blytheville at the time of the trial. Two of the primary witnesses against Jamison at trial were the Blytheville Chief of Police and a detective from the Blytheville Police Department. Thus, Wright and these two witnesses were fellow city employees. Had Wright pursued the motion to suppress the alleged confession, he would have had to attack the admissibility of the statements taken by these two police officers and to undermine the officers' credibility. Under these circumstances, we cannot ignore the possibility that Wright's divided loyalties influenced his decision not to oppose strenuously the admission of the contents of the confession.[5] Jamison alleges that he repeatedly asked Wright to seek a hearing on the suppression of the confession, but Wright told him such a hearing was unnecessary. Jamison also alleges that he asked Wright to pursue an appeal and he relied on Wright's agreement to do so when, in fact, Wright took no steps to effect an appeal. These allegations, at the very least, raise the specter of a very serious conflict of interest, and allow an inference that, perhaps as a result of the conflict, Wright may have acted in a manner contrary to Jamison's interests.

With this factual background in place, we turn to the single issue on appeal. Through his appellate counsel, Jamison argues that his procedural default on the conflict of interest claim was caused by the conflict of interest violation itself. In other words, Jamison is arguing that his continued reliance on counsel whose loyalty was tainted by conflict of interest prevented him from discovering the conflict of interest problem until it was too late to pursue an appeal in the state courts. This is an extremely narrow and tenuous claim, but the facts of this case are extraordinary and should be examined carefully in the light of the relevant standards.

Jamison concedes that his conflict of interest claim is now in procedural default. In order to obtain review of this defaulted claim, Jamison must demonstrate "both adequate 'cause' to excuse his failure to raise the claims in state court and actual 'prejudice' that resulted because the state court did not address the merits of those claims." *Harper v. Nix,* 867 F.2d 455, 457 (8th Cir.1989), *cert. denied,* 491 U.S. 908, 109 S.Ct. 3194, 105 L.Ed.2d 702 (1989) (citing *Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977)). When the defaulted claim is that counsel was burdened by an actual conflict of interest, the "prejudice" element is presumed. *Strickland v. Washington,* 466 U.S. 668, 692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1983). In that case, the Court stated:

> In those circumstances, counsel breaches the duty of loyalty, perhaps the most basic of counsel's duties. Moreover, it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests.

*Id.* As adequate demonstration of "cause" in this case will require Jamison to prove the existence of an actual conflict of interest, we can presume the existence of prejudice.

The Supreme Court has not "establish[ed] conclusively the contours" of the "cause" requirement under *Sykes. See Amadeo v. Zant,* 486 U.S. 214, 221, 108 S.Ct. 1771, 1776, 100 L.Ed.2d 249 (1988). The Court has made it clear that, in the area of ineffective assistance of counsel, default "pursuant to a trial strategy or tactical decision" of counsel would not con-

---

5. Wright did make one formal objection to the admission of the transcript itself. However, this objection came after the entire contents of the transcript had already been placed before the jury, without objection, by the direct testimony of the police chief and the detective.

stitute "cause." *Murray v. Carrier,* 477 U.S. 478, 485, 106 S.Ct. 2639, 2644, 91 L.Ed.2d 397 (1986). The Court concluded in *Murray* that:

> [T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. Without attempting an exhaustive catalog of such objective impediments to compliance with a procedural rule, we note that a showing that the factual or legal basis for a claim was not reasonably available to counsel or that "some interference by officials" made compliance impracticable, would constitute cause under this standard.

*Id.* at 488, 106 S.Ct. at 2645 (citations omitted).

■ The Court has recognized several specific forms of adequate cause related to the effective assistance of counsel. In *Reed v. Ross,* 468 U.S. 1, 14, 104 S.Ct. 2901, 2909, 82 L.Ed.2d 1 (1984), the Court stated that:

> [T]he cause requirement may be satisfied under certain circumstances when a procedural failure is not attributable to an intentional decision by counsel made in pursuit of his client's interests. The failure of counsel to raise a constitutional issue reasonably unknown to him is one situation in which the requirement is met.

*Id.* Mere attorney inadvertence or error ordinarily will not supply sufficient cause. *See Murray v. Carrier,* 477 U.S. at 488, 106 S.Ct. at 2645. The cause must be "something external to the petitioner, something that cannot fairly be attributed to him." *Coleman v. Thompson,* — U.S. —, —, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640 (1991). The Court implied that cause would exist when the "error" of the attorney was "so bad that 'the lawyer ceases to be an agent of the petitioner.'" *Id.* — U.S. at —, 111 S.Ct. at 2567.

■ Applying these standards to the present facts, we conclude that the alleged conflict of interest could constitute suffi-cient cause for the procedural default. The cause of the default could be certain actions or decisions of Wright's flowing from his divided loyalties. The cause of these actions or decisions would thus be external, and perhaps directly contrary, to the defense of Jamison in this case. The cause would satisfy the standard enunciated in *Murray* because it arose from such an external source and not from the trial strategy or tactics of Wright acting in Jamison's defense. That conflicting loyalties may have influenced strategies and tactics does not defeat the conclusion that the conflict of interest was an objective factor external to the defense.

Furthermore, Wright's conflict of interest could be sufficient cause under the specific definition provided in *Ross:* not only would the cause of the procedural default be "not attributable to an intentional decision by counsel made in pursuit of his client's interests", *Reed,* 468 U.S. at 14, 104 S.Ct. at 2909, but counsel's decisions may even have been made to promote the interests of his client's adversary. Finally, Wright's alleged conflict could have been so inimical to Jamison's interests that Wright effectively ceased to be Jamison's agent. *See Coleman,* — U.S. at —, 111 S.Ct. at 2567.

We conclude that Wright's alleged conflict of interest could constitute sufficient cause for Jamison's procedural default. The magistrate judge did not consider this possibility in reviewing Jamison's petition. On the basis of Jamison's allegations and the record before us, we believe the district court should explore this issue on remand.

Certainly, there are shortcomings in the record before us that must be examined on remand. The first deficiency is that Wright's conflict of interest is unsubstantiated in the record. There is nothing in the record conclusively establishing that Wright was the city attorney for Blytheville at the time of Jamison's trial. Obviously, Jamison must establish this predicate of his claim on remand.

The second deficiency is that there is no substantial evidence in the record indicating exactly when Jamison became aware

that Wright was the Blytheville City Attorney. The only indication of Jamison's knowledge is a statement made in his pro se petition. In that pleading, Jamison states that Wright was present at his bond hearing, and then later defended him at trial. If true, this statement arguably indicates that Jamison had actual notice of Wright's association with Blytheville. However, it occurs in a petition replete with factual errors and imprecisions, and written fifteen years after the proceedings it describes.[6] Aside from this one reference, there is no mention of any bond hearing in the record. Again, this issue must be explored on remand.

Finally, the record reveals little or no hard evidence of Wright's actions in his representation of Jamison. The record certainly implies that Wright never disclosed the alleged conflict of interest. Similarly, the record hints that Jamison spent a substantial portion of the three years in which he could have appealed this issue in the state courts relying, to his detriment, on Wright's promise that Wright would appeal the case. If Wright's conflict of interest, and not Jamison's mere ignorance of the law, is the true cause of Jamison's procedural default, these facts would be crucial to the court's determination.

The determination of whether there was cause for the procedural default will require further development of the record. We remand Jamison's case to the district court for a hearing on the issue of cause. If the district court finds that Wright's conflict of interest was the cause of Jamison's procedural default, then it should evaluate the merits of Jamison's petition.

We recognize the stress placed on state court resolution of factual issues in *Keeney v. Tamayo–Reyes,* — U.S. —, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992), *overruling Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), but we do not read *Tamayo–Reyes* as altering our discretionary power to order this hearing.

Finally, we do not reach the question of whether Jamison's case fits within the "*Murray* exception" to the "cause and prejudice" standard. *See Smith v. Murray,* 477 U.S. 527, 537, 106 S.Ct. 2661, 2668, 91 L.Ed.2d 434 (1986). We do recognize similarities between Jamison's case and that of *Pilchak v. Camper,* 935 F.2d 145 (8th Cir.1991). In *Pilchak,* we reached the merits of the petition under the "*Murray* exception" and by-passed the cause and prejudice standard. *Id.* at 148–49. If the district court finds on remand that Jamison did not meet the standard for sufficient cause, it should consider whether his case is an instance of "fundamental injustice" deserving application of the narrow *Murray* exception.

Therefore, we reverse the district court's order dismissing Jamison's petition and remand his case to the district court for a hearing on the issue of cause.

---

**6.** For example, the pleading states that Wright "set [Jamison's] bond" at the hearing. This would not have been Wright's role had he been involved in the hearing.