**Robert Allen JENNINGS, Appellant,**

v.

**James PURKETT, Superintendent, Appellee.**

No. 92–3192.

United States Court of Appeals, Eighth Circuit.

Submitted March 19, 1993.

Decided Oct. 19, 1993.

Ted F. Frapoli, St. Louis, MO, for appellant.

John W. Simon, Asst. Atty. Gen., Jefferson City, MO, for appellee.

Before BOWMAN and MORRIS
SHEPPARD ARNOLD, Circuit Judges, and
KYLE,* District Judge.

BOWMAN, Circuit Judge.

Robert Allen Jennings appeals the District Court's denial of his petition for a writ of habeas corpus. We vacate the judgment of the District Court and remand for further proceedings.

### I.

In January 1989, Jennings was convicted in a Missouri state court, on a plea of guilty, of raping Charlotte Ann Smith. He did not attack his conviction within the ninety days allowed by Missouri Supreme Court Rule 24.035. In November 1991, Jennings filed in United States District Court a petition for a writ of habeas corpus, alleging that his trial counsel, Raymond A. Klemp, labored under a conflict of interest and was thus ineffective. On a magistrate judge's recommendation, the District Court denied the petition, and Jennings appealed.

Klemp's alleged conflict of interest arose out of his ties with the rape victim's family. On May 31, 1985, Klemp had sold real estate to Georgia Smith, the rape victim's mother. The deed also listed James F. ("Bubba") Rodgers and Cathy Rodgers as purchasers. The deed indicates that this sale may have required the purchasers to make payments to Klemp through a period that would have included his representation of Jennings.[1] Moreover, Klemp had suggested to Ollie Jean Jennings, the petitioner's mother, that she talk with the victim's mother, telling her by letter that "Georgia Smith ... is a good woman and I know her very well." Deposition of Raymond A. Klemp, Exhibit B. Klemp admitted discussing Jennings's case with Georgia Smith before Jennings's plea, purportedly to evaluate the State's case; during one of these discussions, Georgia

Smith told Klemp of her belief that Jennings had raped her daughter. The ties between Klemp and Georgia Smith were strong enough for Klemp to have been "a little bit afraid that Georgia Smith might have held this [his representation of Jennings] against me a little bit from the standpoint that she was thinking about the property there." Deposition of Raymond A. Klemp at 55.

Jennings claims that he failed to attack his guilty plea within Rule 24.035's ninety days because he was not informed of Klemp's ties with the victim's family until after he had been incarcerated for several months. Moreover, Klemp admits that he never disclosed to Jennings the facts underlying his alleged conflict of interest. Although Jennings regularly observed from his county jail cell the vehicle of James Rodgers (who Jennings thought was the victim's father) parked outside Klemp's office, Jennings claims that Klemp explained the visits as necessary to prepare the case.

Jennings's mother, however, knew of Klemp's ties with the victim's family before her son's time to attack his guilty plea had expired. Klemp had explained to her that he knew Georgia Smith, and he had also told her in a nonspecific way of a real estate transaction with Georgia Smith.

Jennings contends that his mother did not pass this information along to him until after his time to challenge his guilty plea had expired. The sole piece of evidence in the record that indicates that Ollie Jean Jennings may have told her son of Klemp's ties with the victim's family came at the end of a confused exchange in Ms. Jennings's deposition. The relevant testimony immediately followed a discussion of an affidavit that Ms. Jennings had signed in July 1991 that discussed Klemp's alleged conflict of interest; although this affidavit was apparently prepared by one of her son's fellow prisoners,

---

* The HONORABLE RICHARD H. KYLE, United States District Judge for the District of Minnesota, sitting by designation.

1. The deed also listed the terms of a promissory note for $5500 that, by this Court's calculations, would have made the purchasers, including Georgia Smith, responsible for monthly payments of $144.84 to Klemp until May 30, 1989,

four months after Jennings's guilty plea. It is not clear to this Court whether Klemp and the victim's mother did in fact engage in this ongoing financial transaction, because none of the parties to this case made any mention of this personal financial obligation of Georgia Smith to Klemp.

Ms. Jennings testified in her deposition that it had been prepared by Superintendent Purkett (the defendant in this case) and that she had made her statement by telephone to a lawyer, who then had sent to her a printed version of her statement. The following exchange then occurred:

Q. About how long ago was that?

A. It [the affidavit] was sent [to me] last year, 1991.

Q. Now, this is before your son pleaded guilty. [This sentence makes sense only as a transition to the next question, since the affidavit clearly was prepared well *after* Jennings pleaded guilty.] Did you ever discuss with him what you had learned from Mr. Klemp about Mr. Klemp having some real estate dealing with some relative of Charlotte Ann Smith?

A. Yeah. I talked to him about it.

Q. Did he say anything about it?

A. No.

Q. Was this when he was in the county jail [and therefore before his Rule 24.035 limitations period began to run]?

A. Yeah.

Deposition of Ollie Jean Jennings at 17.

Jennings claims that Klemp rendered ineffective assistance by convincing him to plead guilty when he had a viable consent defense. Jennings cites the following exchange, which took place when Jennings pleaded guilty, to support his allegation that he wanted to claim that the victim had consented:

THE COURT: Q. By pleading guilty are you admitting to the Court that you did in fact commit that act?

A. Uhh—Okay.

The Defendant: Let me talk to you for a minute, Mr. Kemp [sic].

MR. KLEMP: All right. He, he, he says that she agreed—

THE COURT: No, no. Let's—

MR. KLEMP: I'm just—

THE COURT: Let's go off the record and allow the Defendant an opportunity to confer with his attorney.

Why don't y'all go back there and talk about this for a minute.

Transcript of Plea of Guilty at 5.

The District Court referred Jennings's habeas petition to a magistrate judge, who, after allowing discovery but without conducting an evidentiary hearing, found that, because Jennings's mother knew of Klemp's ties with the victim's family, Jennings had available to him the factual basis of his claim before his Rule 24.035 time had expired. The magistrate judge then concluded that Jennings could not demonstrate cause for his procedural default, and recommended that the petition be denied. The District Court, also without conducting an evidentiary hearing, found that Jennings had known of Klemp's dealings with the victim's mother before he pleaded guilty. The court denied Jennings's petition, as recommended by the magistrate judge.

On appeal, Jennings contends there was insufficient evidence in the record to allow the District Court to find that Jennings knew of Klemp's alleged conflict of interest before the time to attack Jennings's conviction expired, and that the District Court erred by denying his request for an evidentiary hearing. We agree, and we vacate the District Court's judgment and remand for an evidentiary hearing on this issue.

## II.

■■ Jennings alleges that his attorney labored under a conflict of interest, induced him to forego his constitutional right to a trial by jury and plead guilty as a result of this conflict of interest, and was constitutionally ineffective. Jennings's allegations state a cognizable Sixth Amendment claim under either *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984) (holding that an attorney's assistance was constitutionally ineffective if it was deficient and the deficiency prejudiced the defendant), or *Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980) (holding that the Sixth Amendment is violated where the attorney labored under an actual conflict of interest that adversely affected his performance). The applicable state limitations period has lapsed, however,

and Jennings is procedurally barred from raising his claim in state court. A federal habeas court will not consider the merits of a claim that is barred by a state procedural rule unless the petitioner shows cause for his noncompliance with the state's rule and prejudice from the alleged violation of federal law. *Coleman v. Thompson,* —— U.S. ——, ——, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991). If the petitioner is unable to meet the cause-and-prejudice standard, he can still obtain a hearing on the merits of his claim by demonstrating that there will otherwise be a fundamental miscarriage of justice. *Sawyer v. Whitley,* —— U.S. ——, —— – ——, 112 S.Ct. 2514, 2518–19, 120 L.Ed.2d 269 (1992).[2]

### A.

To demonstrate cause, the petitioner must show that something external to the defense, something that cannot be attributed to him, resulted in the procedural default. *Coleman,* —— U.S. at ——, 111 S.Ct. at 2566; *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986). An attorney's conflict of interest may be external to his client's defense, and thus a basis for finding cause. *Jamison v. Lockhart,* 975 F.2d 1377, 1380 (8th Cir.1992). The petitioner can show cause where "the factual . . . basis for a claim was not reasonably available" to him, *Carrier,* 477 U.S. at 488, 106 S.Ct. at 2645, and he was not on notice of the claim's availability, *see McCleskey v. Zant,* 499 U.S. 467, ——, 111 S.Ct. 1454, 1473, 113 L.Ed.2d 517 (1991). That Jennings's mother knew of Klemp's conflict of interest prior to her son's guilty plea does not by itself show that the information was reasonably available to Jennings prior to the expiration of Rule 24.035's filing period. If Jennings can show at his evidentiary hearing that he did not know of and could not reasonably have discovered Klemp's ties with the victim's family, he will have demonstrated cause for his procedural default.

### B.

■ To demonstrate prejudice, a petitioner must show that the errors of which he

complains "worked to his *actual* and substantial disadvantage, infecting his entire [hearing] with error of constitutional dimensions." *United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 1596, 71 L.Ed.2d 816 (1982) (emphasis in original). Jennings alleges that, unbeknownst to him, Klemp labored under a conflict of interest that improperly induced Klemp to convince Jennings to forego a trial and, contrary to Jennings's best interests, plead guilty. These facts, if proven, would appear to be clearly sufficient to establish prejudice for purposes of the cause-and-prejudice inquiry.

### III.

Jennings argues that the District Court lacked an adequate basis for its ruling that cause had not been shown for his procedural default. We agree. The record in this case is insufficiently developed to support a finding on the issue of whether Jennings knew or was on notice of Klemp's ties with the rape victim's family before Jennings's Rule 24.035 time elapsed. The sole reference in the record on the issue was the petitioner's mother's deposition statement that she told her son of Klemp's ties with the victim's family while he was still in the county jail. That statement, however, is inherently unreliable. It was made in a confused setting in a deposition, not in open court where the issues could be clarified and a judge could weigh the various witnesses' testimony. Indeed, Jennings's mother's statement immediately followed her testimony that she believed that the affidavit she signed, which was apparently prepared by one of her son's fellow prisoners, was prepared by the superintendent of the prison. This single statement from an apparently confused witness is insufficient to support a finding on this highly critical issue concerning Jennings's knowledge of his trial counsel's ties to the rape victim's mother, and therefore an evidentiary hearing on this issue is required. Accordingly, we vacate the judgment of the District Court and remand

---

**2.** Jennings does not claim on appeal that the fundamental miscarriage of justice exception ap-

plies in this case.

the case for further proceedings consistent with this opinion.