# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-3406WM

_____

John C. Burns,                          *
                                        *
      Appellant,                  *
                                        *  On Appeal from the United
    v.                             *  States District Court
                                        *  for the Western District
                                        *  of Missouri.
James A. Gammon and Jeremiah (Jay)      *
Nixon, Attorney General, Missouri,      *
                                        *
      Appellees.                  *

_____

Submitted:  November 18, 1998

Filed:  April 7, 1999

_____

Before RICHARD S. ARNOLD, FAGG, and HALL,[1] Circuit Judges.

_____

RICHARD S. ARNOLD, Circuit Judge.

John C. Burns, a Missouri prisoner, brings this petition under 28 U.S.C. § 2254 for a writ of habeas corpus.  He challenges his 1987 state-court convictions for attempted forcible rape, armed criminal action, and first-degree assault.  Petitioner

_____

[1]The Hon. Cynthia Holcomb Hall, United States Circuit Judge for the Ninth Circuit, sitting by designation.

argues that his trial counsel rendered ineffective assistance in a number of ways, including not properly presenting evidence of mental impairment; that the prosecuting attorney was guilty of misconduct in his closing argument by falsely implying that Burns, by refusing to plead guilty, had subjected the victim of the crime to the humiliation of having to testify in public; and that the trial judge had made the trial fundamentally unfair by saying, in the presence of the jury, that "vicious crimes" had been committed.[2]  The District Court denied the writ, and petitioner now appeals.  We reject petitioner's second and third arguments, but remand for further proceedings on his ineffective-assistance claim.

---

[2]On February 4, 1998, we granted a certificate of appealability on these three issues.  The certificate was denied with respect to other issues raised below. Petitioner, through appointed counsel, then moved for a "certificate of probable cause."  Petitioner took the position that the new certificate-of-appealability procedure enacted by the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1213 (AEDPA), did not apply to this case, which was filed in the District Court before the enactment of that statute.  By order entered on March 26, 1998, we denied the motion, citing our Circuit precedent, Tiedeman v. Benson, 122 F.3d 518 (8th Cir. 1997).  A petition for rehearing en banc directed to that order was denied.  Petitioner renews in his brief his argument, previously rejected, that the certificate-of-appealability provision of AEDPA does not apply to this case.  We respect counsel's desire to preserve his record on the point, but we must again reject it.  Tiedeman is the law of this Circuit.  One panel is not free to depart from the previous holding of another.

Petitioner also argues that, even under AEDPA, the grant of a certificate of appealability on one or more points brings up the whole case, so as to enable him to argue the merits of points with respect to which the certificate was denied.  We disagree.  The whole point of the new procedure is to limit appeals to issues on which a substantial showing of the denial of a federal constitutional right has been made.

I.

The facts of the case are set forth in the opinion of the Missouri Court of Appeals affirming Burns's conviction on direct appeal. There seems to be no dispute about these facts. Burns does not contest what happened. In fact, he confessed to committing the acts charged. His defense was that he was mentally impaired to such an extent as to provide him with a complete defense or, at least, to diminish his responsibility. We quote from the Court of Appeals' opinion:

> On the night of December 1, 1986, [appellant] entered the "Inside Story" bookstore, located in the Red Bridge Shopping Center. The sales clerk observed him browsing through the books. Subsequently, he called the clerk from the back of the store to help him with some books. The clerk responded but became concerned because of appellant's facial expression and started to step back from him when he grabbed her by the shoulder and threw her into the bookcases. Appellant told the victim, "Don't yell, don't fight, or I'll cut you." He then pushed up her skirt and pulled off her pantyhose and pants. The victim informed appellant that the store owner was due back in a few minutes. Appellant then began hitting the victim about the face and ears. Appellant was kneeling in front of the victim and unzipped his pants and started masturbating. At this juncture appellant tore open the victim's blouse, pulled her bra down and cut the straps with a knife. He then proceeded to again hit the victim in the face. The victim "was afraid I was going to die." The appellant then attempted to rape the victim. The victim testified:
>
>> Q. Okay. When you say he tried to rape you – I know this is difficult, but you're going to have to explain to the Jury exactly what he did that led you to believe he was trying to rape you.

-3-

> A.  He was in front of me with his trousers
> down.  He was trying to penetrate me, and he
> was saying, "Don't get tight, don't get tight."
> All I could see was the knife sticking there in
> the box of books, and he would say, "Don't
> get tight."
>
> At this time the victim heard the book shop door open and
> yelled for help.  The defendant then grabbed his knife and
> jabbed it in her throat and cut across her throat.  He then
> jumped up and left.

State v. Burns, 759 S.W.2d 288, 290 (Mo. App. 1988).

The jury found petitioner guilty on all three charges, attempted forcible rape, armed criminal action, and first-degree assault.  Under Missouri law, because Burns had no prior convictions, it was the jury's duty to fix the punishment.  It sentenced Burns to 44 years, 50 years, and life imprisonment on the three counts, respectively. The convictions were affirmed on direct appeal.  Petitioner did not seek post-conviction relief in the state courts either under Mo. Sup. Ct. R. 27.26, which was in effect at the time of the convictions, in 1987, or under the successor rule, Mo. Sup. Ct. R. 29.15, which became effective on January 1, 1988.

## II.

Petitioner's first argument is that he was denied the effective assistance of counsel at his trial.  The District Court denied relief on this theory without reaching the merits.  The argument, that Court held, was procedurally barred because it had never been properly presented to the state courts.[3]

---

[3]Petitioner says he did present the claim in a pro se petition for habeas corpus under Mo. Sup. Ct. R. 91.  We have held that a Rule 91 petition does not remove a

-4-

There is no doubt that petitioner's federal claim of ineffective assistance of counsel has been defaulted. It is also clear that this default is due to the application of an independent and adequate state procedural rule. Petitioner not having properly raised the issue up to now, there is no process presently available to enable him to raise it in the state courts. State remedies, therefore, have been exhausted (the exhaustion doctrine refers to the absence of presently available state remedies), but the argument is procedurally barred, unless the bar can somehow be avoided. Petitioner can avoid the bar in one of two ways, either by showing cause for the procedural default and prejudice resulting from it, or by showing a fundamental miscarriage of justice. See, e.g., Coleman v. Thompson, 501 U.S. 722, 750 (1991). A fundamental miscarriage of justice is not suggested. Petitioner does contend, however, that he had cause for the procedural default.

Burns argues that he has established cause in two different ways. The first has to do with his failure to seek post-conviction relief. Burns had no Sixth Amendment right to the assistance of counsel in seeking post-conviction relief. E.g., Coleman v. Thompson, supra, 501 U.S. at 752. Indeed, if he had had counsel, either retained or appointed, any deficiencies in that lawyer's performance could not have constituted cause for present purposes. Id. at 752-54. Burns points out that, with respect to claims of ineffective assistance of counsel, a Missouri post-conviction trial court is the first court in which such claims could be made.[4] Whether that situation should be carved out from the Coleman rule was a question not addressed in Coleman itself, see id. at 755-56. This Court, however, has addressed it. We decided the issue adversely to Burns's position in Nolan v. Armontrout, 973 F.2d 615, 617 (8th Cir.

_____

prior procedural default. Byrd v. Delo, 942 F.2d 1226, 1231-32 (8th Cir.), stay denied, 501 U.S. 1271 (1991).

[4]Actually, this is only the general rule. At the time of Burns's trial, such claims could also have been raised, to a limited extent, on direct appeal. We discuss this aspect of the case later in this opinion.

1992). Burns argues at some length that <u>Nolan</u> was wrong, but this panel cannot change <u>Nolan</u>, for reasons we have already discussed.

Burns argues that his case is different because of his lawyers' conflict of interest. The lawyers who represented him at trial, two public defenders, were obviously not in a position to attack their own conduct. Two different lawyers were appointed to represent petitioner on direct appeal, but they were also public defenders, apparently from the same office as trial counsel. (All four lawyers gave their address as the 10th floor of the Jackson County Courthouse.) So Burns never got a lawyer who could effectively, or even properly, argue that his trial counsel had been ineffective. The difficulty with this argument is that Burns had no federal right to any lawyer so far as post-conviction proceedings were concerned. <u>Coleman v. Thompson</u>, <u>supra</u>.

Petitioner asserts that the "absence of a general right to the effective assistance of counsel in rule . . . 29.15 proceedings" does not "bar a finding of 'cause' when, as here, the attorney who was representing the petitioner at the relevant time labored under a conflict of interest." Brief for Appellant 24. Two cases are cited for this proposition: <u>Jennings v. Purkett</u>, 7 F.3d 779, 782 (8th Cir. 1993), and <u>Jamison v. Lockhart</u>, 975 F.2d 1377, 1380 (8th Cir. 1992). Both of them are distinguishable.

No doubt there was a conflict of interest in the present case. The lawyer who represented petitioner on direct appeal came from the same office as the lawyer who had represented him at trial. So far as an argument that trial counsel had been constitutionally ineffective is concerned, direct-appeal counsel had a clear conflict of interest. The same would have been true if the Court had appointed counsel to represent petitioner in a 29.15 or 27.26 proceeding, and that lawyer had come from the same office. The conflict situation addressed in <u>Jennings</u> and <u>Jamison</u> was quite different. There, it was trial counsel himself who had a conflict of interest, for example, a business connection with a key witness that might have prevented counsel

-6-

from making a vigorous cross-examination. That sort of conflict was indeed discussed in the context of "cause" for cause-and-prejudice purposes in both the Jennings and Jamison opinions. The crux of the reasoning in those opinions, however, was that the respective petitioners did not know, or at least claimed not to have known, of the alleged conflict in time to file a 29.15 proceeding within the period allowed by that rule.

It was this lack of knowledge that led us to find "cause" for purposes of the procedural-bar analysis, or, at least, to remand for further findings on the issue of cause. Nothing of the kind exists here. Petitioner's point on the merits is not that trial counsel, at the time of trial, had a conflict of interest, but rather that trial counsel was constitutionally ineffective in other respects – for example, in not properly presenting, through the use of expert witnesses, petitioner's defense of diminished capacity. All of the facts creating that claim had already occurred by the conclusion of the trial, and all of those facts were known to petitioner.

Perhaps there is a hint of unreality in this kind of reasoning, given the fact that petitioner had no lawyer to advise him as to what might or might not have been ineffective assistance of his trial counsel in the constitutional sense.[5] The answer is that the law, in its solicitude for the protection of judgments from collateral attack, presumes that clients have this kind of knowledge. Otherwise, it would never be appropriate to invoke the procedural-bar doctrine against a petitioner who had not been given post-conviction counsel. Such a proposition would run squarely contrary

---

[5]Mo. Sup. Ct. R. 29.07(b)(4) provides that, after the end of a trial, the Court must advise a convicted defendant that he has a right to question the performance of his counsel, and inquire whether there are any reasons for dissatisfaction. If substantial reasons are stated, the Court must then appoint counsel to prepare a 29.15 post-conviction petition. No such advice was given in the present case. The rule, however, did not become effective until January 1, 1988, several months after petitioner's conviction.

to the established doctrine that there is no Sixth Amendment right to post-conviction counsel, and that neither the absence of such counsel, nor the deficient performance of such counsel, if appointed, can create cause to avoid a procedural bar.

In short, we believe the law requires us to reject petitioner's conflict-of-interest theory insofar as it is based on our Jennings and Jamison opinions.

In an effort to avoid this conclusion, petitioner cites Dawan v. Lockhart, 980 F.2d 470 (8th Cir. 1992). That case involved a new Arkansas post-conviction procedure that bore some similarities to the Rule 29.15 procedure in Missouri. In our order granting a certificate of appealability in this case, we invited the parties to discuss "whether appellant had a federal constitutional right to the appointment of counsel to pursue the then-new Missouri post-conviction [relief] procedure," citing Dawan. The key provision in Dawan was newly adopted Ark. R. Crim. P. 36.4, under which any claim of ineffective assistance of counsel had to be presented in the motion for new trial. If this motion, including such claims, was then denied, the ineffective-assistance issues would go up to the appellate court as part of the direct appeal. This procedure, we held, created a post-trial, rather than a post-conviction procedure, properly so called, and, in the special circumstances of the Dawan case, we held that there was a right to the appointment of counsel in connection with the motion for new trial.[6] The difficulty with petitioner's Dawan argument is that Dawan concerned a particular Arkansas procedure which, we have held, is crucially different from Missouri's Rule 29.15. The latter rule creates a collateral remedy, not part of the direct appeal. Lowe -Bey v. Groose, 28 F.3d 816 (8th Cir.), cert. denied, 115 S. Ct.

---

[6]Both the respondent in the present case and the State of Arkansas, which has filed an amicus brief, argue that Dawan was wrongly decided. The argument is misdirected and must be rejected. As we have already observed in this opinion, one panel is not free to disregard the holding of another. Moreover, we reaffirmed Dawan in Robinson v. Norris, 60 F.3d 457 (8th Cir. 1995), cert. denied, 116 S. Ct. 1344 (1996).

674 (1994). There is a Sixth Amendment right to appointment of counsel on direct appeal. That right, plus our understanding of Ark. R. Crim. P. 36.4, was the underpinning of <u>Dawan</u>. There is no such right in post-conviction collateral proceedings, and Missouri Rule 29.15 is such a proceeding. <u>Dawan</u> is therefore not controlling here.

Finally, however, petitioner points out that, at the time of his trial, claims of ineffective assistance in Missouri could be raised on direct appeal. The then-existing collateral remedy, Mo. Sup. Ct. R. 27.26, was not the only means of raising a claim of ineffective assistance of trial counsel, as Rule 29.15 now is. In 1987, when petitioner was convicted, petitioner could have claimed ineffective assistance of trial counsel on direct appeal, because the new Rule 29.15 had not yet gone into effect. And here petitioner's conflict-of-interest argument strikes home, because the counsel the state appointed to handle the direct appeal had, as we have noted, a clear conflict of interest so far as the ineffective-assistance issue was concerned. The State points out, and petitioner concedes, that ineffective-assistance claims could, at that time, have been raised on direct appeal only "so long as the record would permit the appellate court to evaluate the claims." Brief for Appellant 25. See <u>State v. Wheat</u>, 775 S.W.2d 155 (Mo. 1989) (en banc), <u>cert. denied</u>, 493 U.S. 1030 (1990); <u>State v. Harvey</u>, 692 S.W.2d 290 (Mo. 1985) (en banc). So we agree with petitioner to this extent: the absence of conflict-free counsel on direct appeal did violate his Sixth Amendment rights and does furnish cause for his having failed to argue in the state courts that his trial counsel was ineffective, but only to the extent that the trial record itself would have permitted the appellate court to evaluate the claims of ineffectiveness.

In order to avoid the procedural bar, of course, petitioner has to show more than cause. He also has to show prejudice. In addition, he also has to show deficient performance and prejudice in the sense of <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), in order to succeed on the merits of any claim of ineffective assistance. And

finally, in the special circumstances of this case, he would have to show that his ineffective-assistance arguments would have been apparent on the face of the record, so as to be reachable on direct appeal. None of these issues has been briefed, and we do not think it would be prudent for us to address them in the first instance. Instead, this case will be remanded to the District Court for further proceedings to determine whether petitioner can show prejudice for procedural-bar purposes, whether his arguments could have been reached on direct appeal in the Missouri state courts under the procedures that obtained in 1987, and finally (if the analysis gets this far), whether he is entitled to relief under Strickland v. Washington, supra.

III.

Petitioner's next point has to do with a passage in the closing argument of the prosecution. Petitioner's counsel's closing argument had made the point that a defendant is entitled to justice just as much as the state is, and that petitioner had a right to a fair trial and a fair verdict. In response, the prosecutor referred to the rights of criminal defendants. He stated:

> MR. BEDNAR: And it's fair that this defendant have a trial, and it's fair that the State has the burden to prove beyond a reasonable doubt that this defendant is guilty of the crimes charged, the highest burden known to our system. And now it's also fair that he has Caroline Arnold come in here and he had the ability to sit there and, face-to-face, confront all of the witnesses against him, to question them through his attorney, to cross-examination, one of the finest machines invented by man to get to the truth. That was fair, and it was fair that Caroline Arnold had to go through those humiliating --
>
> MS. SCHENKENBERG: Your Honor, I object to that. It was the State that called Ms. Arnold.

-10-

THE COURT: Objection overruled.

MR. BEDNAR: (Continuing) -- that she had to go through those humiliating sexual assaults and those violent acts perpetrated against her in this trial so that the defendant, through his counsel, could cross-examine her.

Now it's fair that you, the Jury, who we chose on Monday, go back to your jury room and deliberate upon the punishment that this defendant deserves for the violent acts that he committed at the Red Bridge Shopping Center on December 1st.

Petitioner argues that these remarks invited the jury to punish him for exercising his constitutional right to trial by jury and to confrontation of the witnesses against him.

We first deal with a procedural point. The Missouri Court of Appeals held that counsel's objection was not sufficiently specific to preserve anything for appellate review. "Such an objection states no grounds for why the remark is opposed, does not allow the court an informed opportunity to rule and ultimately presents no question to the trial court for decision or to the appellate court for review." 759 S.W.2d at 294. The State argues that the point is procedurally barred, not having been properly preserved in the state courts.

The Missouri Court of Appeals, however, went on to give the argument plain-error review. "[U]nless the complained of remarks are determined to have a 'decisive effect' on the jury no plain error exists." Id., quoting State v. Wilson, 757 S.W.2d 622, 630 (Mo. App. 1988). In the Court's view, it could not be determined that the argument had a decisive effect on the jury, and so, the Court held, there was no plain error.

-11-

When the state courts have given a point plain-error review, is that point procedurally barred on federal habeas? As the District Court observed, our precedents are in some disarray on this issue. See Mack v. Caspari, 92 F.3d 637, 641 n.6 (8th Cir. 1996). In this situation, this panel is free to select what it believes to be the better rule. We think we should do what the state court did: give the point plain-error review. In this way, we are not encroaching at all on the authority of the state courts; we are fully respecting their procedural rule; and we are giving the argument the same degree of attention that the state courts gave it. This is what we did in Robert v. Bowersox, 137 F.3d 1062, 1064 (8th Cir. 1998), and in Chambers v. Bowersox, 157 F.3d 560, 566 (8th Cir. 1998), and we will do the same thing here.

We do not think that the argument amounted to plain error. Error it surely was, because the prosecutor's sarcastic statement invited the jury, though not in express words, to punish petitioner for making the victim of the crime go through the ordeal of cross-examination, which petitioner had every right to do. As the Missouri Court of Appeals observed, the remarks were those of "a prosecuting attorney ensnared in his own eloquence, [and] add[ed] little to the case . . .." They were "better left unsaid." 759 S.W.2d at 294-95. We think the trial judge ought to have instructed the jury to disregard the remarks, and certainly not to penalize petitioner for having exercised his right to go to trial. But petitioner has not met his burden of demonstrating that the prosecutor's statements had a decisive effect on the jury's decision. The comments were isolated in nature, and there was overwhelming evidence of petitioner's guilt. Petitioner makes the point, in addition, that the remarks were untrue, because he had offered to plead guilty, an offer which the State had rejected. Accordingly, in petitioner's view, it was the actions of the State, and not of his side, that had necessitated the trial. We cannot agree. True, petitioner had offered to plead guilty, but he had not done so unconditionally. A more accurate statement would be that petitioner had asked to enter into plea negotiations, a request that the State refused. The State was under no obligation to negotiate. It had a right to go to trial, just as petitioner did. Petitioner could have avoided a trial by pleading guilty

-12-

unconditionally.  He chose not to do so.  In our view, there is no miscarriage of justice here, and therefore no plain error.

## IV.

Petitioner's third and final point relates to a remark that the trial judge made in the presence of the jury.  As we have noted, Burns did not contest the charge, in the sense of denying that he had committed the acts alleged.  His lawyers attempted to present a defense of diminished capacity or lack of specific intent, but they did not offer any professional mental-health evidence in support of this defense.  They tried to get it before the jury in the form of "life history" testimony from the petitioner and his parents:  events of petitioner's childhood, trouble he had gotten into in school, the difficulties of his new life as a college student, and the like.  The prosecution objected to this lay evidence, and the trial court sustained the objection.  Notwithstanding this action by the Court, which, as far as we can tell, was completely appropriate, counsel persisted in asking questions that the Court had clearly ruled out.  When objections were sustained, the questions were rephrased in different form, and the objections were again sustained.  Finally, the trial judge lost patience and made the following statement in the presence of the jury:

> THE COURT:  Objection sustained.  Counsel, you've elected to make your disrespectful argument in the presence of the Jury and I'm going to answer you in the presence of the Jury.  You have not elicited any information from this defendant about his mental state at the time of these vicious crimes and the Court has properly ruled that those other items are inadmissible, and you're admonished not to criticize the Court's order and not to try to get improper matters into evidence.

-13-

Defense counsel then moved for a mistrial "based on the Court's . . . characterization . . . that this was a vicious crime.  It's a comment by the Court on this crime, and I believe that's uncalled for."  The motion was denied.

The Court, in our view, should not have lost its patience and should not have said what it did in the jury's presence.  The Court's statement that counsel had behaved disrespectfully, we think, was permissible, but we think it was error for the Court to refer to the crimes charged as "vicious crimes."  No doubt they were vicious.  The evidence amply supports the statement.  In addition, there was no doubt that the defendant had done what the State charged.  Whether his actions were "crimes," however, was a decision to be made by the jury, and the trial court should not have made a statement that assumed the answer to this question.[7]  The State makes the argument that the evidence was harmless, and surely it was, so far as the question of guilt or innocence was concerned, but petitioner also argues that this particular jury had the job of fixing his sentence, and that the Court's characterization could well have caused the jury to give the defendant the severe sentence he received.  The sentence, as we have noted, was 44 years, 50 years, and life on the three counts, respectively.  This sentence was almost exactly what the State had requested in its closing argument (50 years, 50 years, and life).  The sentence was made consecutive by the Court, which the Court had the authority to do, but the present point has to do with the jury's action in fixing the sentence.  It is hard for anyone to say what motivated the jury to make this decision, and impossible to know whether the trial judge's use of the adjective "vicious" played any part in the jury's thought processes.

In this situation, there being no argument of procedural bar, we have some difficulty with the point presented.  Neither side can show what effect the improper

---

[7]On the other hand, defense counsel herself stated in closing argument:  "There is no real issue about the crime itself."  Tr. 224 (Respondent's Exhibit A).

-14-

remark had on the jury, so the case would come down, we suppose, to burden of proof. If the State has the burden of proof of proving the error harmless beyond a reasonable doubt, it is hard to see how it could win. Here, however, we think the State does win, because the remedy of a mistrial is a drastic one, and certainly not the only way the error could have been cured. A proper instruction admonishing the jury to disregard the Court's characterization of the crimes, or, at least, reminding the jury that it was its job, and not the Court's, to fix the penalty, no matter what remarks the Court may have made during the trial, would, in our opinion, have cured the error. No such instruction was requested. We agree with the statement of the Missouri Court of Appeals:

> The appellant did not seek a specific ruling, such as requesting the trial court to instruct the jury to disregard his characterization of the assault, instead he sought a mistrial. Mistrials are drastic remedies and the granting of a mistrial is within the trial judge's discretion.

759 S.W.2d at 291. We agree with this holding, and reject petitioner's argument for this reason.

## V.

In short, petitioner's second and third points, having to do with the prosecutor's closing argument and with the trial court's remarks in the presence of the jury, are rejected, the former on a plain-error basis and the latter after full review on the merits. Petitioner's first argument, ineffectiveness of trial counsel, is remanded for further proceedings. On remand, the District Court should determine first whether petitioner has shown prejudice for procedural-bar purposes. If the answer to this question is yes, the Court should consider the merits of petitioner's ineffective-assistance argument. An important point to keep in mind, however, is that the ineffective-

assistance argument is open on habeas only to the extent that a Missouri appellate court would have reviewed it on a direct appeal filed before January 1, 1988. To this limited extent, the judgment of the District Court dismissing the petition for habeas corpus is reversed, and the cause is remanded for further proceedings consistent with this opinion.

It is so ordered.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.