**STATE of Missouri, Plaintiff-Respondent,**

v.

**Herbert REED, Defendant-Appellant.**

**No. 14330.**

Missouri Court of Appeals, Southern District, Division Two.

July 25, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 28, 1986.

914 ■

William L. Webster, Atty. Gen., Carrie Francke, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Dee Wampler, Springfield, for defendant-appellant.

ROBERT LEE CAMPBELL, Special Judge.

Herbert Reed appeals his conviction of second-degree burglary. The jury assessed appellant's punishment at imprisonment for one year in the county jail. We affirm.

Appellant first contends that there was insufficient evidence to support a conviction since the state's evidence was entirely circumstantial.

In assessing the sufficiency of the evidence, ..., we must accept as true all evidence and inferences that tend to support the verdict and disregard all evidence and inferences to the contrary. Our inquiry is limited to whether the evidence, viewed in the light most favorable to state, is sufficient to support the verdict. *State v. Story*, 646 S.W.2d 68, 72 (Mo. banc 1983).

See also, *State v. Bolder*, 635 S.W.2d 673, 679 (Mo. banc 1982), cert denied, 459 U.S. 1137, 103 S.Ct. 770, 74 L.Ed.2d 983 (1983).

The evidence establishes that in the early morning hours of January 14, 1983, Jerry Delcore was called by police to his place of business, a meat processing plant in Fordland, Missouri. There he found a window broken and side door open. Two sides of fresh beef were missing as well as 200 to 300 pounds of frozen meat. There was blood spattered about the floor and doorway. Delcore had secured the building before leaving the previous evening.

The burglary initially was discovered by Springfield Police Detectives Jerry Patten and David Asher. On January 13, 1983, Detective Patten had received information from an informant that a burglary was planned at the Fordland Locker Plant later that evening by Harvey Young, Cecil "Butch" Rogers and appellant. As a result, Patten and his partner, Detective Asher, proceeded to Fordland, arriving at the plant around 1:30 a.m. on January 14. When they arrived, they found a broken window, an open locker door and other signs of a burglary.

Asher and Patten called Webster County officials to the plant and then left for Springfield to join uniformed officers in a stakeout of appellant's residence. At approximately 3:40 a.m. that morning, they saw a green and white Chevrolet pick-up occupied by the three suspects arrive at appellant's residence. The pick-up was being driven by appellant, and Asher testified at trial that he had seen appellant drive this truck frequently. A police monitor was blaring in the truck. The cab of the vehicle was characterized by an odor similar to that found at the locker plant. A flashlight, two pry bars and several pairs of gloves were found in the cab. The cloth-

ing of all three occupants was splattered with blood, and Asher testified he saw blood on the camouflage jacket worn by appellant.

In the bed of the pick-up, the detectives found several packages of frozen meat, fish and vegetables stamped with the name Barbara Reed, appellant's ex-wife. Appellant and Barbara Reed were known to be associating at the time. There also was blood in the bed of the pick-up. A search warrant was obtained that morning for Barbara Reed's residence, where a substantial quantity of the stolen meat was found, including one of the sides of beef. Jerry Delcore identified the meat as that taken from his establishment.

Springfield Police Crime Lab criminologist Gene Gietzen testified that the substance which stained the various articles of clothing worn by the occupants of the pick-up, as well as the bed of the vehicle, was cow blood. Cow blood also was found on some, but not all, of the gloves found in the cab of the vehicle. Gietzen testified that a white powdery substance containing calcium and phosphorus was found near the locker plant, and a similar substance containing the same elements was also found in the pick-up and on boots belonging to Young.

The informant, Ralph Maxwell, was brought from the State penitentiary to testify at trial. He testified that he had been acquainted with Harvey Young, who then introduced him to Butch Rogers and a man identified as Herb Reed. He did not identify appellant as Herb Reed at trial. During a conversation in a motel room, Maxwell learned of a possible burglary which Young, Roger and Reed might commit at the Fordland Locker Plant. After his subsequent arrest, Maxwell gave this information to Detective Patten, including the names of the participants.

Appellant testified in his own defense. He stated that he had been married and divorced twice and that he still saw his first ex-wife, Barbara Reed, in connection with their mutual son. He testified that on the evening of January 13, he had gone to Wild Bill's in Springfield, along with his other ex-wife, Nancy Walker, her sisters and others. He said Nancy had become upset with him and abandoned him there when she and the others left. He testified that he remained at Wild Bill's until closing time at 1:30 a.m. He testified that he then went to a nearby restaurant, Denny's, to eat breakfast, where he ran into Young and Rogers. He had dealings with Rogers in the past, and he got in their truck to go home, offering to drive because they had been drinking. He acknowledged that the cab of the vehicle had an unusual odor that could have been from the locker plant, but said he did not notice the scanner being on. He denied participation in the burglary.

Nancy Walker, appellant's second ex-wife, testified that she had been with appellant January 13, until she and her other companions left around 12:30 a.m. Several other witnesses also testified that they had been with, or seen, appellant at Wild Bill's on January 13, although whether any of them were with him or saw him after 12:30 a.m. is questionable from the evidence.

The evidence presented by the state against appellant, although circumstantial, was legally sufficient to uphold his conviction.

When the State's case is based on circumstantial evidence, the facts and circumstances relied upon to establish guilt must be consistent with each other and with the hypothesis of defendant's guilt. The facts and circumstances must also be inconsistent with and exclude every reasonable hypothesis of defendant's innocence. But the circumstances need not be absolutely conclusive of guilt or demonstrate impossibility of innocence and the mere existence of other possible hypotheses is not enough to remove the case from the jury.

*State v. Turner,* 631 S.W.2d 695, 697 (Mo.App.1982).

See also *State v. Puckett,* 611 S.W.2d 242, 244 (Mo.App.1980).

■ The evidence establishes that: (1) Detectives had information that appellant,

916 ∎ ▪▪▪▪▪▪▪▪▪▪▪

Harvey Young and Butch Rogers were planning a burglary of the Fordland processing plant; (2) The plant, in fact, was burglarized on the night the informant said it would be; (3) At 3:40 a.m., appellant was stopped in the company of Harvey Young and Butch Rogers; (4) He was driving a vehicle which had a police scanner blaring; (5) Burglar's tools, consisting of a flashlight, pry bars and gloves, were found in the truck; (6) Appellant's clothes, and the clothes of Young and Rogers, were splattered with blood; (7) The cab of the truck smelled like the processing plant; (8) A large quantity of the stolen meat was found at the home of appellant's ex-wife.

This court finds that there was more than sufficient evidence to sustain appellant's conviction. Appellant's first point of error is without merit.

▪ Appellant also contends that the trial court erred in denying appellant's motion for mistrial on the basis of testimony elicited by the state to the effect that appellant was not questioned further after having been advised of his Miranda rights. Appellant asserts that this resulted in a violation of his constitutional right against self incrimination and constituted an indirect reference to the assertion of his right to remain silent.

Appellant is correct in arguing that the silence of an accused while under arrest is not admissible against him and that it may not be shown that an accused failed to volunteer an exculpatory statement. *State v. Nolan,* 595 S.W.2d 54, 56 (Mo.App.1980).

Testimony that defendant was given his Miranda rights is permissible if there is no embellishment such as comment that defendant failed to make a response. *State v. Johnson,* 536 S.W.2d 851, 857 (Mo.App. 1976).

The prosecutor asked, "Did you attempt to question them?" The reply, "Not specifically, no sir" was not a reference direct or indirect, to appellant's silence. Although better left unasked, the jury was merely advised that none of the three were questioned by the police. The Court did not err in refusing to declare a mistrial. See *State v. Jakoubek,* 619 S.W.2d 880 (Mo.App. 1981).

Finding no error, the sentence of the Court is affirmed.

CROW, P.J., and DOUGLAS E. LONG, Jr., Special Judge, concur.