STATE of Missouri,
Plaintiff–Respondent,

v.

**PREMIER SERVICE CORP.,**
**Defendant–Appellant.**

No. 54121.

Missouri Court of Appeals,
Eastern District,
Division Four.

Feb. 7, 1989.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 8, 1989.

**654**

Edward R. Joyce, St. Louis, for defendant-appellant.

Craig Eugene Ellis, St. Louis, for plaintiff-respondent.

STEPHAN, Judge.

Premier Service Corporation d/b/a Airport Limousine Service appeals the judgment following its conviction by a jury for discriminating against a visually handicapped person in violation of sections 209.-150.2 and 209.160 RSMo Cum.Supp.1984 (amended 1988). The trial court sentenced defendant to pay a $1,000.00 fine. We affirm.

On April 26, 1985, Mary J. Schmitt, a blind woman traveling with her seeing eye dog, arrived at Lambert Airport in St. Louis County. Michael Leavie, a TWA passenger assistance representative, escorted her as she was leaving the airport. At the airport's lower level drive, she attempted to board an Airport Limousine Service's van. Although there were empty seats on the van, the driver Vladimer Minnovich refused to admit her or the dog. He directed her to Ms. Janice Willard, the dispatcher for Airport Limousine Service who told Ms. Schmitt she would have to take her own limousine at a cost of $15.00. Mr. Leavie, familiar with Airport Limousine Service, knew the regular fare to be only $5.90.

Vladimer Minnovich testified that he told Ms. Schmitt there was not enough room for her and her dog, with only the front bucket seat available. Michael Leavie had noticed more than one vacant seat when Ms. Schmitt initially attempted to board the van. Thomas Narrow, an airport police officer who arrived on the scene, also observed open seats in the front and rear of the van. Distressed at the situation, Ms. Schmitt yelled, "They're breaking the law," while waving a copy of § 209.150.2, the statute prohibiting discrimination against a visually handicapped person. She testified she was carrying a copy of the statute because she had previously encountered resistance to her boarding an airport limou-

sine with her guide dog at Lambert Airport.

The dispatcher directed Mr. Minnovich to keep to the schedule and to leave without Ms. Schmitt, stating that she would see that transportation was provided for Ms. Schmitt. Mr. Minnovich left. On his return about one hour later, an airport police officer took his name and number, but asked no questions about the incident. No charges were filed against Mr. Minnovich, the van driver.

Premier Service Corporation d/b/a Airport Limousine Service ran the limousine service at the airport under an exclusive contract with the City of St. Louis. For the privilege of operating vans to the airport under Premier Service Corporation's exclusive license, the van drivers, including Mr. Minnovich, paid Premier Service Corporation a monthly rental fee. Premier Service Corporation was eventually charged with violation of the statute prohibiting discrimination against a visually handicapped person on a common carrier.

Defendant raises the following seven points as trial error: 1) its denial of defendant's request to strike certain jurors for cause; 2) its refusal to order sequestration of witnesses unless defendant's chief executive officer and designated trial representative also agreed not to remain in the courtroom; 3) its admission of certain testimony and a letter, both of which were characterized as hearsay by defendant; 4) its exclusion of certain exhibits offered by defendant because they were undisclosed despite a discovery request by the State; 5) its submission of an instruction defining agency where no evidence of agency had been offered; 6) its denial of defendant's motion for acquittal challenging the submissibility of the State's case; and 7) its submission of the verdict director.

▮ Defendant's first point contends the trial court's refusal to strike two prospective jurors for cause violated its right to a full panel of qualified jurors. Defendant highlights portions of the voir dire where prospective jurors Mr. Haider and Mr. Klittick stated that they would tend to believe the episode alleged in the indictment oc-

curred merely because an indictment had, in fact, been returned against defendant and that they would have to be convinced by defendant that the indictment was not true. Defendant moved to strike the jurors for cause. The trial court denied the motion. Defendant ultimately utilized peremptory challenges to remove the two jurors from the panel.

Defendant claims that the jurors' answers to questions from both defendant's counsel and the prosecutor are equivocal and unresponsive.

The two jurors initially stated that they would attach some weight to defendant's having been arrested and charged with a crime. However, Mr. Klittick's subsequent answers to questions by the prosecutor clarified his position. He indicated that the existence of the indictment did not mean he assumed that defendant corporation was guilty. He affirmed his ability to base his verdict only on the evidence and the court's instructions. He understood the state's burden of proof and acknowledged that he would acquit defendant if the state failed to establish defendant's guilt beyond a reasonable doubt. We do not consider Mr. Klittick's answer "I hope not" when asked whether he was prejudging the case to be equivocal. His responses considered *in toto* disclose no uncertainty about his ability to be impartial. The questions and answers posed to Mr. Haider essentially echoed the colloquy between the prosecutor and Mr. Klittick.

The trial transcript convinces us that the jurors' responses, when reviewed in their entirety, refute defendant's claim that these jurors indicated they would require evidence from defendant to convince them of its innocence or that these jurors would consider the mere filing of the indictment tantamount to a finding of defendant's guilt on the charge of discrimination. The trial court's discretion in ruling upon challenges for cause to prospective jurors will not be disturbed unless it is manifestly against the record of the voir dire examination and constitutes an abuse of discretion. *State v. Smith,* 649 S.W.2d 417, 422 (Mo.

banc 1983). We find no such abuse. Point denied.

Defendant's second point complains of the trial court's decision concerning sequestration of witnesses. Before trial began, the prosecutor moved the court to include Mr. J.B. (Jet) Banks, defendant's designated trial representative in any order of witness sequestration since he had also been endorsed as a witness for defendant. The trial court agreed. Defendant complains that forcing it to choose between sequestration and representation at counsel table violated defendant's rights under the confrontation clause.

The decision whether witnesses should be excluded from the courtroom is discretionary with the trial judge and will not be disturbed unless abused. *State v. Pollard*, 719 S.W.2d 38, 42 [5] (Mo.App.1986). We have previously recognized in civil cases that a corporation is entitled to have its representatives present at a trial; and, in a multitude of situations, exclusion of the corporate president or other officer from the courtroom would be an abuse of discretion. *Fischer v. MAJ Investment Corp.*, 631 S.W.2d 902, 905[1] (Mo.App.1982). We see no reason to afford this right only to the corporate civil litigant and believe it has equal applicability in the criminal arena. However, while Mr. Banks was the chief executive officer and designated trial representative of defendant corporation, he had also been endorsed as a witness for defendant and testified at length. Three other members of defendant's board of directors, none of whom had been endorsed, were available to sit at counsel's table in Mr. Banks' stead, had he been sequestered.

Defendant has failed to assert any persuasive reasons for the necessity of Mr. Banks' presence over other potential trial representatives for defendant. We discern no abuse of discretion or prejudice to defendant by conditioning the imposition of the witness sequestration rule upon Mr. Banks' exclusion from the courtroom. We deny defendant's second point.

Defendant's third point charges that the testimony of a certain witness and an exhibit were erroneously admitted over his objection of hearsay. The prosecutor introduced as an exhibit a letter from Fred Lilley, Director of the Missouri Council of the Blind, to Lawrence McKinney, defendant's Director of Marketing and Sales, at defendant's address concerning an earlier incident on March 15, 1985, where Ms. Schmitt had been denied admittance to an airport limousine van.

Mrs. Winkler, the secretary at the Missouri Council of the Blind, testified regarding the letter and acknowledged that she did not know from whom Mr. Lilley had obtained the information regarding the episode discussed in the letter. Mr. Lilley did not testify. Defendant complains that the admission of her testimony and the exhibit were inadmissible hearsay and that their admission lent credence to Ms. Schmitt's testimony concerning this previous episode.

We agree with defendant that the letter and Mrs. Winkler's testimony were hearsay. As in point two, however, defendant has shown no prejudice warranting reversal by the erroneous admission of the hearsay evidence. Ms. Schmitt had previously testified to the details of the March 15 episode. She had stated that defendant's dispatcher who was involved in the instant matter, Janice Willard, told her that she and her guide dog could not ride in a regular limousine at the $5.90 fare but that Ms. Schmitt could hire a special van for $35.00. At the time, Ms. Schmitt was travelling to a meeting with members of the Missouri Council for the Blind in St. Louis. Upon arriving at the meeting, she recounted the incident which gave rise to the letter from Mr. Lilley to defendant's Director of Marketing and Sales. Thus, the contents of the letter and Mrs. Winkler's testimony were essentially cumulative. While having merit, defendant's third point does not constitute reversible error.

Defendant's fourth point disputes the exclusion of certain exhibits proferred by defendant. At trial, the State had argued that Mr. Minnovich, the van's owner and driver, was defendant's agent. Defendant sought to rebut that evidence and any inference that Mr. Banks and defendant

company were biased against blind people with guide dogs by introducing certain exhibits, including the driver service agreement between Mr. Minnovich and defendant, the certificate of public convenience and necessity under which defendant operated and Mr. Banks' voting record in the state legislature on bills involving the blind. The State objected that defendant had not disclosed these exhibits to the State despite its discovery request. Defendant does not dispute its failure to disclose such documents to the State. Defendant does dispute the court's choice of sanctions and argues alternatives less drastic than the exclusion of the evidence were available, such as calling a recess to permit the prosecutor to examine the documents.

Rule 25.16 permits a trial court to impose the sanction of excluding evidence upon a party's failure to comply with the disclosure requirements of Rule 25.05. The imposition of the sanctions provided for in Rule 25.16 is within the discretion of the trial court and will be disturbed on appeal only when the sanctions result in fundamental unfairness to defendant. *State v. Watson*, 755 S.W.2d 644, 645 (Mo.App. 1988). Defendant has failed to demonstrate any fundamental unfairness in view of the fact that its witnesses essentially testified to the information contained in the omitted documents. We conclude the trial court did not abuse its discretion by its imposition of sanctions following defendant's admitted discovery violation.

■ Defendant's fifth point asserts the trial court erred in submitting instruction six regarding the definition of agency over defendant's objection that no evidence established Mr. Minnovich, the driver and owner of the van, was an agent or employee of defendant Premier Service Corporation d/b/a Airport Limousine Service. While recognizing that the evidence is to be taken in a light most favorable to the State, defendant emphasizes that "Mr. Minnovich owns his own van, pays all his own expenses, decides where to get his van washed and serviced, and pays defendant a monthly licensing or franchise fee and a radio rental fee; [t]he monthly fee remains the same regardless of how many passengers Mr. Minnovich transports each month." Defendant argues that Mr. Minnovich is not authorized to act on behalf of the corporation and that he can neither take any action nor make any policy decisions in behalf of defendant corporation. The crux of defendant's position is that Mr. Minnovich is merely an independent contractor who pays defendant to operate on its routes and under its certificate. From this vantage point, defendant corporation concludes it cannot be held liable for the wrongs committed by its independent contractors.

Defendant's perspective of the evidence and agency law is short-sighted. Defendant overlooks § 562.056 RSMo 1978 (now 1986), the statute dealing with criminal liability of corporations and in effect when defendant was charged. This statute defines agent as "any director, officer or employee of a corporation or unincorporated association or *any other person* who is authorized to act in behalf of the corporation." § 562.056.3(1) (Emphasis added). As given in instruction six, M.A.I.–CR3d 333.00, "agency" means "any director, officer, or employee of a corporation, or unincorporated association, or any other person who is authorized to act in behalf of the corporation or unincorporated association." The instruction mirrors the definition of agency contained in the statute.

Defendant's view of the evidence minimizes the importance of the evidence that defendant had an exclusive contract with the City of St. Louis requiring defendant provide the public scheduled ground transportation to and from Lambert Airport. The only drivers providing this service were independent contractors, including Mr. Minnovich. His van had the company logo on it, evidence of his authority to act in behalf of defendant corporation. Mr. Minnovich operated the van on a schedule devised and maintained by defendant, and followed the directions of defendant's radio dispatcher in adhering to the company schedule when the radio dispatcher, clearly an employee of defendant, ordered Mr. Minnovich to leave the airport without Ms. Schmitt aboard. Mr. Banks also admitted

that the only people his company had as drivers were these independent contractors. In addition, defendant company pays the liability insurance for casualty losses on the vans. Our review of the evidence in its entirety satisfies us that the State established Mr. Minnovich's agency within the meaning of § 562.056.

■ Defendant's sixth point contends the trial court erroneously denied its motion for judgment of acquittal at the close both of the State's case and of all the evidence. Defendant argues the State failed to meet its burden of proof because the State did not prove the following: one, Mary Schmitt was denied admittance unless she paid an extra fare for the dog; two, Mr. Minnovich was defendant corporation's agent; and three, defendant was a common carrier.

Despite defendant's attack on the sufficiency of the evidence, this point may be disposed of summarily. When determining the sufficiency of the evidence, an appellate court must consider the facts in evidence and all reasonable inferences drawn therefrom in the light most favorable to the State, disregarding all evidence and inferences to the contrary. *State v. Reed,* 714 S.W.2d 913, 914 (Mo.App.1986). The State established that $5.90 was the usual fare for transportation on vans operated by defendant. Mary Schmitt testified she was denied admittance to the van with her guide dog and was told by defendant's dispatcher that she could take a special van for $15.00, the usual fare charged on a special van. From this evidence the jury could infer the $9.10 difference to be an extra fee to be charged for providing limousine service to her with her dog. The evidence discussed in point five herein satisfied the State's burden of proof concerning Mr. Minnovich's agency status. Finally, to establish that defendant was a common carrier, the State introduced into evidence the airport concession agreement entered into between the City of St. Louis and defendant. That agreement contained an express provision reflecting the status of defendant as a common carrier. Appellant's sixth point is denied.

Appellant's seventh point attacks the verdict director. He argues its submission was erroneous because the instruction was not supported by the evidence and went beyond the indictment because no evidence established that the owner-operator of the van had ever discussed with or demanded from Mary Schmitt payment of any fare, or that the owner and operator of the van was defendant's agent. As previously discussed, we have determined the evidence was sufficient for the jury to infer that Mr. Minnovich was defendant's agent and that defendant, through its agents, demanded additional fare to carry both Ms. Schmitt and her guide dog. Defendant's challenge to the instruction on these grounds has no merit.

■ Defendant has raised an additional complaint concerning the verdict director in the argument portion of his brief. However, such objection was not contained in his motion for new trial as required under Rule 29.11(d). Accordingly, our examination is limited to plain error. Rule 30.20; *State v. Stevenson,* 660 S.W.2d 236, 237 (Mo.App.1983). The standard for plain error review of instructions is that the trial court must have so misdirected or failed to instruct the jury on the law of the case so as to cause manifest injustice. *State v. Preston,* 673 S.W.2d 1, 9 (Mo. banc 1984).

Defendant complains that the indictment uses the language "... defendant ... *acting with others* committed the misdemeanor of discrimination toward the visually handicapped ..." (Emphasis added). He contrasts that language with the instruction's use of the phrase "... the defendant corporation, *acting through its agents* ..." (Emphasis added) and argues the phrase in the instruction goes beyond the body of the indictment. A corporation, a fictional entity, can only act through its agents. We find the instruction comports with our understanding of corporate liability under § 562.056 RSMo 1986. The concept of "acting with others" is not an element of the crime involved here, and the use of the phrase in the indictment is mere surplusage. We conclude the trial court did not misdirect or fail to instruct the jury

on the law of the case causing manifest injury to defendant. Point denied.

The judgment of the trial court is affirmed.

SMITH, P.J., and SATZ, J., concur.