448 F.Supp.2d 1113 (2006)
James FIELDS, Petitioner,
v.
Don ROPER, Respondent.
No. 4:03CV1389 RWS.
United States District Court, E.D. Missouri, Eastern Division.
September 8, 2006.

*1116 MEMORANDUM AND ORDER

SIPPEL, District Judge.
This matter is before me on the petition for writ of habeas corpus filed by petitioner James Fields. I referred this matter to United States Magistrate Judge Frederick R. Buckles for a report and recommendation on all dispositive matters pursuant to 28 U.S.C. § 636(b). On August 10, 2006, Judge Buckles filed his recommendation that petitioner's habeas petition should be denied.
*1117 Petitioner objects to the Report and Recommendation. In his objections, petitioner argues that Judge Buckles improperly concluded that Grounds 4 and 5 of his petition were procedurally defaulted. Petitioner also claims that Judge Buckles erroneously determined that his petition should be denied. I have conducted a de novo review of the entire file, including all matters relevant to the petition. After careful consideration, I will adopt and sustain the thorough reasoning of Magistrate Judge Buckles and will deny petitioner's habeas petition.
First, Judge Buckles correctly determined that Grounds 4 and 5 of petitioner's habeas petition are procedurally defaulted because they were not raised on direct appeal or on appeal from the denial of his motion for post-conviction relief. Judge Buckles correctly rejected petitioner's argumentraised again here as an objection to the Report and Recommendationthat this court can conduct "plain error" review of his procedurally defaulted claims. As Judge Buckles explained, procedurally defaulted claims cannot be reached by the federal habeas court unless the petitioner demonstrates adequate cause to excuse his default and resulting prejudice, or actual innocence. Although petitioner alleged that ineffective assistance of counsel constituted cause for his procedural default, Judge Buckles properly rejected that claim as insufficient to avoid the procedural bar. While ineffective assistance of counsel can, in some instances, constitute cause to avoid the procedural bar, in this case it cannot. Because petitioner's ineffective assistance of counsel claims are themselves procedurally defaulted, they cannot serve as a basis for demonstrating "cause" and avoiding the procedural bar with respect to the underlying claims. Edwards v. Carpenter, 529 U.S. 446, 453, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000). Because Grounds 4 and 5 are procedurally defaulted, I will overrule petitioner's objection to the procedural default analysis contained in the Report and Recommendation.
With respect to petitioner's claims that are not procedurally defaulted, I agree with Judge Buckles that the state court determination on the merits of these claims was not "contrary to" or an "unreasonable application of" clearly established federal law. 28 U.S.C. § 2254(d)(1). I also agree that petitioner has not shown that the state court determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2). Because Judge Buckles correctly decided petitioner's claims, I am overruling petitioner's objections to the Report and Recommendation and will deny habeas relief for the reasons stated in the Report and Recommendation.
I have also considered whether to issue a certificate of appealability. To grant a certificate of appealability, the Court must find a substantial showing of the denial of a federal constitutional right. See Tiedeman v. Benson, 122 F.3d 518, 522 (8th Cir.1997). A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. Cox v. Norris, 133 F.3d 565, 569 (8th Cir.1997) (citing Flieger v. Delo, 16 F.3d 878, 882-83 (8th Cir. 1994)).
Petitioner has not made such a showing. Therefore, I will not issue a certificate of appealability.
Accordingly,
IT IS HEREBY ORDERED that the Report and Recommendation filed on August 10, 2006[# 19] is adopted and sustained in its entirety.
IT IS FURTHER ORDERED that petitioner's objections to the Report and *1118 Recommendation [# 22] are overruled in their entirety.
IT IS FURTHER ORDERED that Petitioner James Fields's Petition for Writ of Habeas Corpus is DENIED.
IT IS FURTHER ORDERED that the Court will not issue a certificate of appealability.
A separate judgment in accordance with this Memorandum and Order is entered this same date.

REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
BUCKLES, United States Magistrate Judge.
Presently before this Court is the pro se petition of Missouri State prisoner James Fields for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. All pretrial matters have been referred to the undersigned United States Magistrate Judge for appropriate disposition pursuant to 28 U.S.C. § 636(b).
On November 16, 1998, following a trial by jury in the Circuit Court of the City of St. Louis, Missouri, James Fields ("Petitioner") was convicted of murder in the first degree, assault in the first degree, and two corresponding counts of armed criminal action. (Resp.Exh. C, 158-161.)[1] On February 4, 1999, the Honorable Timothy Wilson sentenced Petitioner as a prior and persistent offender to life in prison without the possibility of parole for the murder conviction, and thirty years' imprisonment for each of the three remaining convictions, the sentences to run concurrently. (Resp.Exh. C, 176-179.) Petitioner is presently incarcerated at the Potosi Correctional Center located in Mineral Point, Missouri.
Petitioner filed a timely appeal with the Missouri Court of Appeals on the grounds of insufficiency of the evidence, denial of due process based upon alleged prosecutorial misconduct, and judicial misconduct. (Resp.Exh. C, 182-83); State v. Fields, 18 S.W.3d 446 (Mo.Ct.App.2000) (per curiam) (motion for reh'g and transfer denied May 10, 2000; application for transfer to Missouri Supreme Court denied June 27, 2000.) On March 28, 2000, the Missouri Court of Appeals affirmed Petitioner's conviction and sentence. Id. On August 28, 2000, Petitioner filed a timely post-conviction motion and a first amended motion and request for an evidentiary hearing pursuant to Missouri Supreme Court Rule 29.15, alleging ineffective assistance of counsel and prosecutorial misconduct. (Resp. Exh. H, 3-16 and 24-41.)[2] An evidentiary hearing was held on November 1, 2001, following which the court denied Petitioner's motion. (Resp. Exh. G and Resp. Exh. H, 42-48.) Petitioner then filed a timely appeal in the Missouri Court of Appeals, which affirmed on May 20, 2003. (Resp.Exh. K.) The instant petition for writ of habeas corpus was filed in this Court on October 6, 2003.
In his original Petition, Petitioner raises three claims for relief:

*1119 (1) That the trial court erred in denying his motion for judgment of acquittal as to Count I, murder in the first degree, because the State failed to prove deliberation as required by law to support a conviction for murder in the first degree;
(2) That the trial court erred in failing to declare a mistrial when the prosecuting attorney, during closing argument, disparaged Petitioner's alibi defense; and
(3) That the trial court erred in failing to find Petitioner's trial counsel ineffective when she failed to present the alibi testimony of Tyhesha Williams and Louwanna Williams.
Respondent argues that Petitioner's claims lack merit and should be denied.
In a subsequent Traverse, Petitioner appears to raise additional claims for habeas relief, and specifically,
(4) That the trial court erred in failing to conduct a Batson[3] hearing, given that the prosecutor used peremptory challenges to strike three African-American venire persons; and
(5) That the trial court erred by allowing the State to proffer evidence relating to a separate shooting for which Petitioner was charged and tried simultaneously with the offenses at issue herein, but upon which Petitioner was acquitted.
In an Order entered May 10, 2006, this Court provided Petitioner an opportunity to address the apparent defaulted nature of these claims. Petitioner responded to this Order on July 3, 2006. The defaulted nature of these claims is discussed, infra.

I. Exhaustion Analysis

Before this Court may grant relief on the merits of a petition for a writ of habeas corpus, a petitioner must first exhaust his state law remedies. 28 U.S.C. § 2254(b)(1); O'Sullivan v. Boerckel, 526 U.S. 838, 842, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). This exhaustion requirement is satisfied if a petitioner has fairly presented his claims first in state court, or if there are no currently available non-futile state remedies. Smittie v. Lockhart, 843 F.2d 295, 296 (8th Cir.1988). The court must first examine whether the constitutional dimensions of Petitioner's claims have been fairly presented to the state court. Id. If not, the petitioner may still meet the exhaustion requirement if there are no currently available non-futile state remedies by which he could present his claims to the state court. Id. Even if a petitioner meets the exhaustion requirement in this manner, the federal court still may not reach the merits of the petitioner's claim unless the petitioner: (1) demonstrates adequate cause to excuse his state court default, and actual prejudice resulting from the alleged unconstitutional error; or (2) that a fundamental miscarriage of justice would occur in the absence of federal review. Coleman v. Thompson, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). A review of the record shows that Petitioner has satisfied the exhaustion requirement with regard to the claims raised in Grounds one and three, as he properly raised these claims in state court, where they were determined on their merits.
In Ground two, Petitioner challenges a statement made by the prosecuting attorney during closing argument. As Petitioner's trial counsel failed to object to the challenged statement at the time it was made, the issue was not properly preserved for appeal, but was in fact raised on direct appeal and reviewed by the Missouri Court of Appeals for plain error. Fields, 18 S.W.3d 446 ("No error of law appears."). Whether a state appellate court's plain error review of a claim otherwise *1120 procedurally defaulted is sufficient to raise the procedural bar is an area of uncertainty. Hornbuckle v. Groose, 106 F.3d 253 (8th Cir.1997). However, in Burns v. Gammon, 173 F.3d 1089, 1095 (8th Cir.1999), the Eighth Circuit suggested that, in this situation, the federal habeas court undertake the same review as the state court in determining a petitioner's claim:
We think we should do what the state court did: give the point plain error review. In this way, we are not encroaching at all on the authority of the state courts; we are fully respecting their procedural rule; and we are giving the argument the same degree of attention that the state courts gave it. Id. at 1095.
Furthermore, the undersigned notes that Respondent concedes Petitioner's exhaustion of his state remedies with regard to the three claims in Petitioner's original Petition. With respect to the claims raised in Grounds four and five, a review of the record shows these claims to be exhausted through procedural default inasmuch as Petitioner failed to properly raise these claims in state court and has no currently available state remedy by which to pursue the claims.

II. Procedural Bar
As an initial matter, the undersigned notes that the claims raised in Grounds four and five were not raised in Petitioner's original petition but rather were included in his Traverse filed February 2, 2004. A review of these additional claims and the record as submitted by Respondent in response to Petitioner's original claims appears to show Grounds four and five to be procedurally defaulted inasmuch as Petitioner failed to properly raise the claims in state court. In light of this circumstance, the Court provided the Petitioner the opportunity to address the defaulted aspect of these claims. (See Order filed May 10, 2006.) King v. Kemna, 266 F.3d 816, 822 (8th Cir.2001) (court has discretion to raise and address issue of procedural default sua sponte.) Petitioner having been provided such opportunity, the Court now turns to the claims raised in Grounds four and five. In Grounds four and five, Petitioner claims that the trial court erred in failing to conduct a Batson hearing, given that the prosecutor used pre-emptory challenges to strike three African-American venire persons; and that the court erred when it allowed the State to proffer evidence during trial of shootings which occurred on April 21, 1997.[4] A review of the record shows Petitioner not to have raised these claims in any state court proceeding.
To avoid procedural default, a claim must be presented at each step of the judicial process in state court. Jolly v. Gammon, 28 F.3d 51, 53 (8th Cir.1994) (citing Benson v. State, 611 S.W.2d 538, 541 (Mo.Ct.App.1980)). While Petitioner asserts that this Court must review his procedurally defaulted claims for plain error, such an assertion has no merit. Procedurally defaulted claims cannot be reached by the federal habeas court unless the petitioner demonstrates adequate cause to excuse his default, and prejudice resulting from the alleged unconstitutional error; or demonstrates that a fundamental miscarriage of justice would occur if the federal court were not to address the *1121 claim. Coleman, 501 U.S. at 731-32, 750, 111 S.Ct. 2546.
Petitioner also argues that his attorney's failure to make a record regarding a potential Batson challenge establishes the necessary cause to excuse his procedural default. While the cause necessary to resuscitate a procedurally defaulted claim may include ineffective assistance of counsel, Petitioner must have properly raised that same ineffectiveness claim in state court. Becht v. United States, 403 F.3d 541, 545 (8th Cir.2005). In the instant case, the record shows that Petitioner did raise a claim of ineffective assistance of counsel during his post-conviction proceedings. However, that claim pertained to trial counsel's failure to call certain alibi witnesses. In order to establish the cause necessary to avoid procedural default, a petitioner must raise the same factual grounds and legal theories in the state courts as those raised in the federal petition. Wemark v. Iowa, 322 F.3d 1018, 1021 (8th Cir.2003). Because Petitioner's present ineffective assistance of counsel claim is based on different facts and theories, the undersigned finds that Petitioner therefore failed to properly raise the claim in state court, and he may not assert such ineffective assistance of counsel as cause for his default of the instant Batson claim. See Williams v. Kemna, 311 F.3d 895, 897 (8th Cir.2002).. Petitioner asserts no other grounds as cause for his procedural default, nor demonstrates prejudice resulting therefrom.
Finally, because Petitioner has made no claim of actual innocence, he cannot satisfy the "fundamental miscarriage of justice" exception to showing cause and prejudice. Schlup v. Delo, 513 U.S. 298, 314-15, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995); Washington v. Delo, 51 F.3d 756, 761 (8th Cir.1995); see also McCall v. Benson, 114 F.3d 754, 758 (8th Cir.1997).
The claims raised in Grounds four and five are, therefore, both procedurally barred from review and should be dismissed without consideration of their merits. See Maynard v. Lockhart, 981 F.2d 981 (8th Cir.1992).

III. Merits of Claims

The facts adduced at trial and summarized by the Missouri Court of Appeals, in its Memorandum Supplementing Order Affirming Judgment Pursuant to Rule 30.25(b), (Resp.Exh. F) show the following:
On the evening of April 14, 1997, Terrill Bush and Cordell Bass picked up Defendant from his home. They drove to a drug house, bought some "dips" FN and smoked them. Defendant was paged on his pager by his girlfriend. Defendant said his girlfriend wanted him to bring her chicken from Popeye's Chicken. Before going to Popeye's, Defendant stated he needed to get a gun from his house because he was having trouble with some people in the neighborhood. After retrieving the gun from Defendant's home, they drove to Popeye's and bought chicken at the drivethrough window at approximately 12:45 a.m. on April 15, 1997. Defendant then directed Bush, who was driving, to Bacon Street.
On April 15, 1997, at approximately 1:30 a.m., June Dobbs, Lavita Mahone, Omar Thomas, and Byron Smith were standing in a vacant lot in the 2500 block of Bacon Street in the City of St. Louis. Bush, Bass and Defendant drove down Bacon Street in a two-door rust-colored Cadillac. Bush was driving, Defendant was in the front passenger seat, and Bass was in the back seat of the car. As the car approached the group in the vacant lot, Defendant fired several shots at them. Dobbs died as a result of a gunshot wound to her abdomen. Mahone *1122 survived six gunshot wounds to her stomach, legs, buttocks and thigh.
Shortly after the shooting, Bush and Bass dropped Defendant off at the corner of SpringFN and Maffitt. The police pulled the car over a few minutes later. The police found shell casings identical to those found at the scene of the shooting in the back seat of the Cadillac. Bush and Bass were taken to the police station for questioning. Both men independently identified Defendant as the shooter.
The police interrogated and released Bush and Bass, and then arrested Defendant. Defendant told the police that on the evening of the shooting he was at home with his girlfriend. Defendant also said he had gone to a Popeye's restaurant with one of his friends. Initially Defendant denied having been with Bush and Bass, but later admitted he spent some time earlier in the evening with them. Defendant denied any involvement with the shooting on Bacon Street but acknowledged that he had heard about it.[5]
FN According to testimony, dips are cigarettes soaked in PCP (Phencyclidine). (footnote in original.)
FN The transcript is not clear whether the avenue referred to is Spring or North Spring. For the purposes of this memorandum, we will refer to the aforementioned avenue as Spring. (footnote in original.)
(Resp. Exh. F, pages 3-4.)
Petitioner was tried in the Circuit Court of the City of St. Louis before the Honorable Timothy Wilson from November 10 through November 16, 1998, cause number 981-1317. (Resp. Exh. A I-III.) Petitioner employed an alibi defense, relying upon the testimony of his pregnant girlfriend, Ms. Tequila Williams, and her mother, Ms. Anita Williams. (Resp. Exh. A-II at 499-502 and 519-522.) They testified that Petitioner was present at a birthday celebration at the Williams home on the night in question, that he never left the house, and in fact slept at the Williams home all night in the same bed with Tequila Williams. (Id.) The credibility of these witnesses was impeached during cross-examination by the prosecuting attorney, and Petitioner was convicted of the April 15, 1997 shootings of Ms. Dobbs and Ms. Mahone.[6] (Id. at 504-517 and 523-532.)
A. Ground oneSufficiency of the Evidence
Petitioner first alleges that the trial court erred in denying his motion for judgment of acquittal in that there was insufficient evidence to support his conviction of murder in the first degree, and specifically, that the evidence adduced at trial was insufficient to prove deliberation, an essential element of the crime of murder in the first degree. Petitioner raised this claim on direct appeal. The Missouri Court of Appeals affirmed, finding "sufficient evidence from which a reasonable jury might have found [Defendant] guilty beyond a reasonable doubt." Fields, 18 S.W.3d at 446. In his Traverse, Petitioner also argues that the prosecution failed to prove that Petitioner "acted with another" in the commission of the crime, as charged.
In this case, there was more than sufficient evidence upon which a rational trier of fact could have found Petitioner guilty beyond a reasonable doubt of the offense of murder in the first degree. Furthermore, there was equally sufficient evidence *1123 that Petitioner acted with another in the commission of the crime, although acting with another is not an element of the crime of murder in the first degree. See R.S.Mo. § 565.020 (1994).
Section 2254(d)(1) requires federal habeas courts to test the determinations of state courts "only against clearly established federal law, as determined by the Supreme Court of the United States," and prohibits the issuance of a writ of habeas corpus unless the state court's decision is "contrary to or involved an unreasonable application of clearly established federal law." Williams v. Taylor, 529 U.S. 362, 379, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is contrary to clearly established Supreme Court precedent when it is opposite to the Court's conclusion on a question of law, or different than the Court's conclusion on a set of materially indistinguishable facts. Williams, 529 U.S. at 412-13, 120 S.Ct. 1495; Carter v. Kemna, 255 F.3d 589, 591 (8th Cir.2001). A state court's determination is an unreasonable application of Supreme Court precedent if it unreasonably refuses to extend a legal principle to a new context where it should apply. Carter, 255 F.3d at 592, citing Williams, 529 U.S. at 407, 120 S.Ct. 1495.
At the time Petitioner's conviction became final, the law was clearly established that, for due process purposes, the relevant inquiry in reviewing the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). See also In re Winship, 397 U.S. 358, 361-64, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). A state appellate court's conclusion that the evidence was sufficient to support a criminal conviction is entitled to great deference by a federal court. Jackson, 443 U.S. at 323, 99 S.Ct. 2781.
The elements of the crime of murder in the first degree are defined by state law. See Turner v. Armontrout, 845 F.2d 165, 168 (8th Cir.1988). In Missouri, "a person commits the crime of murder in the first degree if he (1) knowingly (2) causes the death of another person (3) after deliberation upon the matter." R.S.Mo. § 565.020 (1994). Deliberation means cool reflection upon the victim's death for some amount of time, no matter how short, and may be proven by "indirect evidence and inferences reasonably drawn from the circumstances surrounding the killing." State v. Rousan, 961 S.W.2d 831, 841 (Mo. bane), cert. denied, 524 U.S. 961, 118 S.Ct. 2387, 141 L.Ed.2d 753 (1998).
State court factual findings are presumed to be correct. 28 U.S.C. § 2254(d). The presumption applies to factual findings made by the state appellate court. Smith v. Jones, 923 F.2d 588, 590 (8th Cir.1991). State court findings may not be set aside unless they are unsupported by the record. Sumner v. Mata, 449 U.S. 539, 547-49, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981); Spence v. Nix, 945 F.2d 1030, 1031 (8th Cir.1991). Petitioner bears the burden of establishing that the state court's factual determinations are erroneous. Williams v. Armontrout, 912 F.2d 924, 930 (8th Cir.1990) (en banc) (citing Sumner, 449 U.S. at 550, 101 S.Ct. 764.) Petitioner does not challenge the factual findings of the Missouri Court of Appeals, set forth herein, but claims they are insufficient to support his conviction. After carefully reviewing the record, the undersigned finds the state court's findings of fact are supported by the record. Thus, to the extent that the findings apply to the claims raised in the instant petition, the findings are adopted herein. See Williams, 912 F.2d at 930-31.
*1124 In reviewing Petitioner's claim that the evidence was insufficient to sustain his conviction, the Missouri Court of Appeals identified the standard for determining claims of sufficiency of the evidence as articulated in Jackson and applied state law in determining whether there was indeed sufficient evidence to support Petitioner's conviction of the crime of murder in the first degree. Specifically, the court noted as follows:
The evidence supports finding both deliberation and acting with another. The record indicates Defendant did not initially have a gun with him that evening, but told his companions he had to get one because he was having trouble with some people in the neighborhood. After getting the gun, Defendant told Bush where to turn, eventually directing them to the location of the shooting. On these facts a jury could reasonably find Defendant had cooly reflected on killing before he fired the gun.
The record, additionally, indicates sufficient evidence Defendant was acting with another. The evidence establishes that both Bass and Bush were in the car at the time of the shooting. Bush drove Defendant to pick up the gun, and then drove him to where the shooting actually occurred. From this the jury could have concluded that either Bush, or Bass, or both of them, knew what Defendant intended to do and were acting with him.
As to the issue of acting with another person, the State argues it took upon itself a greater burden required because acting with another is not an element of first degree murder or first degree assault. The State cites State v. Premier Service Corp., 765 S.W.2d 653, 658 (Mo. App. E.D.1989) in support of its proposition that it was not required to prove Defendant acted with another, but doing so was mere surplusage.
MAI-CR 304.04, Notes on Use 5(d) states that there is no need to use an instruction on acting with another where the evidence shows the conduct constituting the elements of the offense were committed solely by the defendant and there is also evidence that someone aided the defendant. Using the ordinary verdict directing instruction for the offense is sufficient to submit the defendant's liability. But the prosecution may request the instruction of acting with another in such a case. As a result, the prosecution assumes an additional and unnecessary burden. MAI-CR 304.04, Notes on Use 5(d).
In this case we find sufficient evidence exists for the jury to have found Defendant guilty of the crimes charged relating to the shooting on Bacon Street. As stated above, the State has sufficiently proven Defendant cooly reflected before firing the gun. There was sufficient evidence that Defendant solely committed every element of the crimes charged and although it was unnecessary for the State to assume the additional burden of proving Defendant acted with another in commission of the crimes charged, the State presented sufficient evidence for the jury to find Defendant acted with another.
(Resp. Exh. F, at pages 6-7.)
This decision was well-based on law and fact and was not "contrary to," nor did it involve an "unreasonable application of," clearly established federal law. See 28 U.S.C. § 2254(d)(1). Furthermore, Petitioner has not shown that the state court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." See 28 U.S.C. § 2254(d)(2). The state court's finding of sufficiency of the evidence is entitled to deference by *1125 this Court. Jackson, 443 U.S. at 323, 99 S.Ct. 2781. Furthermore, following a review of the trial transcript, and the evidence presented to the jury as set forth above, the undersigned finds that sufficient evidence existed for a rational trier of fact to have found Petitioner "cooly reflected" on killing before shooting June Dobbs; specifically, that he made a special trip home to retrieve his gun, gave Bush specific driving directions that led them to the scene of the shooting, and then fired his gun into the midst of a group of people. The undersigned further finds sufficient evidence existed for a rational trier of fact to have found Petitioner acted with another in the commission of the offense; specifically, that Petitioner was in the car with Bush and Bass at the time of the shooting, and further that Bush, acting upon Petitioner's directions, drove Petitioner to his home to retrieve his gun and then drove him to the site of the murder. Finally, even if the evidence was insufficient to support a finding of acting with another, such is not an element of the crime of murder in the first degree. See R.S.Mo. § 565.020 (1994).
Therefore, Petitioner's first claim for relief should be denied.
B. Ground twoDue Process
In his second ground for relief, Petitioner claims that the trial court erred in failing to order a mistrial when the prosecuting attorney, during closing argument, made a remark that allegedly disparaged Petitioner's alibi defense. Petitioner raised this point on direct appeal, and the Missouri Court of Appeals denied the claim.[7]Fields, 18 S.W.3d 446.
At the time Petitioner's conviction became final, the law was clearly established that the Fourteenth Amendment to the United States Constitution guarantees a criminal defendant the right to due process of law. U.S. Const. Amend. XIV; Darden v. Wainwright, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). When considering whether comments by a prosecuting attorney violate the Fourteenth Amendment's due process guarantee, the relevant question is whether such comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden, 477 U.S. at 181, 106 S.Ct. 2464. It is insufficient that a prosecutor's remarks were merely "undesirable or even universally condemned." Id. (citing Donnelly v. De-Christoforo, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). Improper closing argument violates due process when the argument is so egregious that it renders the entire trial fundamentally unfair. Darden, 477 U.S. at 181, 106 S.Ct. 2464.
In the instant case, Petitioner argues that the trial court erred when it failed to order a mistrial after the prosecuting attorney *1126 made the following statement during closing argument: "Next we turn to the defense. The defense was alibi, and I don't think there's anybody here who believe[s] that alibi." (Resp. Exh. A-III at 589.) Petitioner asserts that the prosecutor's statement suggested to the jury that he thought defense counsel had lied. Petitioner further asserts that the jury viewed the prosecutor as an authority figure, and the impact of his remark was therefore intensified. Petitioner raised this claim in his direct appeal, and the Missouri Court of Appeals denied the claim. In denying this issue on direct appeal, the court found as follows:
A prosecutor may state personal opinions on matters, including the defendant's guilt, where such opinions are fairly drawn from the evidence. State v. Taylor, 944 S.W.2d 925, 936 (Mo. banc 1997). Additionally, a prosecutor may comment on the evidence and the credibility of the witnesses. Id. "Comments to the effect that a defendant or a defense witness were lying have repeatedly been upheld." State v. Weaver, 912 S.W.2d 499, 513 (Mo. banc 1995), cert denied, 519 U.S. 856, 117 S.Ct. 153, 136 L.Ed.2d 98 (1996). In Weaver, the prosecutor called the defense a "cock and bull story" and a "smokescreen." Id. at 513. In that case the Missouri Supreme Court said: "[a] prosecuting attorney may comment on the evidence and the credibility of the witness and, in the process, may belittle and point to the improbability and untruthfulness of specific testimony." Id.

. . . . . .
We conclude the trial court did not plainly err in failing sua sponte to address the statement of the prosecution now challenged on appeal.
(Resp. Exh. F at 8-9.)
This Court is limited to plain error review because, due to the lack of objection at trial, the Missouri Court of Appeals only reviewed the issue for plain error. Hornbuckle, 106 F.3d at 257. Plain error is error which is both obvious and substantial. United States v. Frady, 456 U.S. 152, 163, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982), (citing United States v. Gerald, 624 F.2d 1291, 1299 (5th Cir.1980)). Unless the prosecutor's remarks are determined to have had a "decisive effect" on the jury, there is no plain error. Burns, 173 F.3d at 1095.
In Darden, the Supreme Court addressed the issue of prosecutorial misconduct based upon statements made during closing argument. 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144. There, the prosecutor made not just a single, isolated statement, but launched a litany of attacks upon the defendant's general character, calling him an "animal" who should not be allowed to leave his cell without being tied to a leash held by a guard. Darden, 477 U.S. at 180-81, 106 S.Ct. 2464. The prosecutor further made several offensive comments reflecting an emotional reaction to the case, and suggested to the jury that, unless they imposed a death sentence, the defendant may one day walk free. Id. In holding that these comments did not deprive the petitioner of his constitutional rights, the Supreme Court noted that the prosecutor did not manipulate or misstate the evidence, and further did not implicate other specific rights of the accused, such as the rights guaranteed by the Fifth and Sixth Amendments to the United States Constitution. Id. at 182, 106 S.Ct. 2464.
In this case, there is no obvious and substantial error. As found by the Missouri Court of Appeals, the prosecutor in this case did not manipulate or misstate the evidence, but rather argued to the jury that Petitioner's alibi defense was not believable. As in Darden, these comments did not deprive Petitioner of due process. *1127 Nor has Petitioner shown that the prosecutor's comments had a "decisive effect" on the jury, or that they implicated any other constitutional right. See Burns, 173 F.3d at 1095. As such, based upon Darden, the decision of the Missouri Court of Appeals was well based on law and fact and was not "contrary to," nor did it involve an "unreasonable application of," clearly established federal law. 28 U.S.C. § 2254(d)(1). In addition, Petitioner has not shown that the court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2). Under Darden, Petitioner must prove that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a constitutional violation." Darden, 477 U.S. at 181, 106 S.Ct. 2464. Petitioner has not so proven. Even assuming, arguendo, that the prosecutor's comment was condemnable, there has been no showing, either in state court or in the instant proceedings, that the comment so tainted the trial proceedings that Petitioner's right to due process was denied. The claim raised in Ground two of the instant petition is without merit.
Therefore, Petitioner's second claim for relief should be denied.
C. Ground threeIneffective Assistance of Counsel
Petitioner finally claims that he received ineffective assistance of trial counsel because his attorney failed to call Tyhesha and Louwanna Williams as additional alibi witnesses. Petitioner raised this point in his post-conviction motion, which was denied following an evidentiary hearing, and raised the issue again on appeal of the denial of the motion. Upon review of the merits of the claim, the Missouri Court of Appeals applied the standard set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and applicable state law, and affirmed. (Resp.Exh.K.) The Missouri Court of Appeals reasoned that the testimony Petitioner alleged would have been given by Tyhesha and Louwanna Williams would have been merely cumulative of that given by alibi witnesses Tequila and Anita Williams, and that the witnesses would not have provided Petitioner with a viable defense as he was not in their view on the night in question. Id. at 5-6. Finally, the Missouri Court of Appeals agreed with the motion court's determination that Petitioner did not inform his attorney of the existence of these witnesses, as Petitioner claimed he had. Id. at 5.
At the time Petitioner's conviction became final, it was clearly established that the Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to effective assistance of counsel. U.S. Const. amend. VI; Strickland, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. There are two components to a successful claim of ineffective assistance of counsel. First, the Petitioner must show that counsel's performance was deficient, which requires a showing that counsel erred so seriously that she or he was not functioning as "counsel" guaranteed by the Sixth Amendment. Id. at 686, 104 S.Ct. 2052. Second, the petitioner must show that such deficient performance prejudiced the defense, which requires a showing that counsel's errors were so serious that petitioner did not receive a fair trial, rendering the resulting conviction unreliable. Id. To establish prejudice, Petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. 2052. The petitioner bears a heavy burden in overcoming a *1128 "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689, 104 S.Ct. 2052.
Regarding the claim raised in Ground three of the instant petition, Petitioner contends that Tyhesha and Louwanna Williams would have testified that Petitioner was present at a birthday party at the Williams home on the night of April 14, 1997, and did not leave the house until the morning of April 15, 1997. Petitioner claims that such testimony would have rehabilitated the alibi testimony offered by Anita and Tequila Williams, which was impeached by the prosecuting attorney on cross-examination. After an evidentiary healing on this issue, the motion court denied Petitioner's claim, finding that the testimony Petitioner alleged would have been given would have been merely cumulative of the testimony of Anita and Tequila Williams. (Resp. Exh. H at 47.) The motion court further noted that, because Petitioner testified that he arrived at the party and later went to bed in the basement at certain times, he would not have been in view of the proposed witnesses during the time in question. (Id.)
On appeal, the Missouri Court of Appeals set forth the Strickland standard for ineffective assistance of counsel, (Resp. Exh. K at 3) and found:
The motion court determined "the testimony that [M]ovant alleges would have been given would have been cumulative of that given by witnesses Anita and Tequila Williams." We agree. Evidence supporting Movant's alibi that he was at the party that evening had already been adduced at trial through the testimony of Anita and Tequila. While Tyhesha and Louwanna testified at the evidentiary hearing that they were in attendance at a party with Movant on the evening of April 14, 1997, neither could definitively state that they were with Movant or were aware of his whereabouts during the entire duration of the party. The testimony of Tyheshal and Louwanna would not have provided any new information, nor would it have provided Movant a viable defense. Moreover, as the motion court noted, "according to [M]ovant he arrived at the party between 9-9:30 [p.m.] and went to bed in the basement around 11-11:30 [p.m.] and he was therefore not in view of the witnesses during the entire time of the party," particularly during the time of the shooting which occurred around 1:30 a.m.
. . . . . .
Movant has not shown Tyhesha and Louwanna would have provided him with a viable defense had they testified, and therefore Movant is unable to prove he was prejudiced by his counsel's failure to call Tyhesha and Louwanna as alibi witnesses in his trial.
(Id. at 5.)
The determination of whether to call certain witnesses is left to trial counsel as a matter of trial strategy. See U.S. v. Washington, 198 F.3d 721, 723-24 (8th Cir.1999). Under the instant facts, it cannot be said that Petitioner was prejudiced by counsel's failure to call Tyhesha and Louwanna Williams. As found by the post-conviction motion court and the Missouri Court of Appeals, their testimony would have been "merely cumulative" of alibi testimony already offered. In addition, because the witnesses were not in view of Petitioner during a large portion of the night, particularly during the time the shootings occurred, it is unlikely that their testimony would have yielded a different outcome. Furthermore, the Missouri Court of Appeals applied the Strickland standard, and Petitioner has failed to demonstrate that such application was unreasonable. The decision was well based on *1129 law and fact and was not "contrary to" nor involved an "unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d)(1). Finally, Petitioner has not shown that the state determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2).
Therefore, Petitioner's claim raised in Ground three of his petition should be denied.
Therefore, for all of the foregoing reasons,
IT IS HEREBY RECOMMENDED that petitioner James Fields' petition for writ of habeas corpus (Docket No. 4) be dismissed without further proceedings.
The parties are advised that they have until August 21, 2006 in which to file written objections to this Report and Recommendation. Failure to timely file objections may result in waiver of the right to appeal questions of fact. Thompson v. Nix, 897 F.2d 356, 357 (8th Cir.1990).
Aug. 10, 2006.
NOTES
[1] The undersigned notes that the trial transcript, recorded in Respondent's Exhibits A III, is missing page 179. It is apparent that this page contains the concluding lines of defense counsel's opening statement. Upon review of Petitioner's claims raised in this cause, however, the undersigned concludes that page 179 of Exhibit A is immaterial to these proceedings.
[2] The undersigned notes that pages 37 through 40 of Respondent's Exhibit H, the end of Petitioner's First Amended Motion to Vacate, Set Aside or Correct Judgment and Sentence and Request for Evidentiary Hearing, are missing. A review of Exhibit H shows that the missing pages address issues not presently before this Court. As such, the absence of these pages from the record is immaterial to this proceeding.
[3] Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
[4] These shootings were separate offenses for which Petitioner was charged and tried simultaneously with the offenses at issue herein, and of which he was ultimately acquitted. Prior to trial, Petitioner's trial attorney filed a Motion for Severance of Offenses on Petitioner's behalf, which was denied. (Resp. Exh. C at 18-20.) Petitioner did not raise this issue on direct appeal.
[5] As Petitioner does not rebut these facts with clear and convincing evidence, they are presumed correct. 28 U.S.C. 2254(e)(1).
[6] As noted, supra, additional shootings occurred on April 21, 1997, for which Petitioner was tried and acquitted. (Resp.Exh. C, 158-165.)
[7] Because defense counsel did not object to the prosecutor's remark, the Missouri Court of Appeals reviewed Petitioner's claim for plain error, pursuant to Mo. R.Crim. Pro. 30.20, which states that "plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." In Missouri state court, review for plain error involves a two step process. The first step is to determine if plain error has Occurred. This is done by determining whether the claim for review "facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted." Mo. R.Crim. Pro. 30.20; State v. Brown, 902 S.W.2d 278, 284 (Mo. banc 1995). All prejudicial error is not plain error. "Plain errors are those which are `evident, obvious, and clear [.]'" State v. Scurlock, 998 S.W.2d 578, 586 (Mo. Ct.App.1999) (quoting State v. Bailey, 839 S.W.2d 657, 661 (Mo.App. W.D.1992)). If plain error is found, it is up to the discretion of the court whether to proceed to the second step, determining "whether the claimed error resulted in manifest injustice or miscarriage of justice." Id. at 587.